## Case No. 7,267.

### JENKINS v. ELDREDGE et al.

[3 Story, 299.] [1]

Circuit Court, D. Massachusetts. May Term, 1845.

[1] [Reported by William W. Story, Esq.]

B. R. Curtis, for plaintiff.
W. H. Gardiner, for defendant Eldredge.

STORY, Circuit Justice. The application in the present case is of an unusual nature; at least, in the form, in which it is presented by the prayer of the petition. The petition asks for a rehearing of the cause, and also for leave to file a bill in the nature of a bill of review, for the purpose of bringing new evidence before the court. It is very clear, that a bill, in the nature of a bill of review, is not the appropriate remedy for such a purpose, in the present stage of this cause; for such a bill lies only after a final decree, and not upon an interlocutory decree, like the present, where the subject is still before the court in fieri, upon the master's report, in pursuance of the interlocutory decree.

In respect to a rehearing, if it were to be upon the original evidence in the case, and that only, after all that I have heard from the counsel upon the present occasion, it does not appear to me, that any thing has been offered, which, in my judgment, shakes the propriety of the original decree. I remain firmly convinced, that it is entirely correct in its main deductions, as to law and fact; and, if it be founded in error, that error must be corrected by the appellate tribunal; and if the decree should, upon an appeal, be reversed, it would be binding upon the conscience of this court, whether I should approve of it or not. Very strong and marked disapprobation of the decree has been expressed by the learned counsel for the petitioner, in language of considerable warmth, and certainly somewhat unusual at the bar of this court. I do not doubt, that the counsel is perfectly sincere in that disapprobation; and it seems not to have occurred to him, that the learned counsel on the other side may have, from the beginning, been as deeply, and thoroughly, and sincerely convinced of the merits of the case on the part of the plaintiff, although it has been expressed in a more subdued tone, not the less impressive, because it was more measured. During a pretty long period of judicial life, it has been my misfortune on many occasions to have differed widely from counsel on one side or the other, in important causes, as to the merits thereof. But this, although a matter of regret, could not, as it ought not, in any, the slightest degree, to influence the duties or judgment of the court. The asseverations of counsel, however solemn, have nothing to do with the facts or merits of causes before the court; and if any judge could be so unstable in his views, or so feeble in his judgment, as to yield to them, he would not only surrender his independence, but betray his duty. However humble may be his own talents, he is compelled to treat every opinion of counsel, however exalted, which is not founded in the law, and the facts of the case, to be voiceless and valueless. He is compelled to say, in the language of other days; "Sin altior istis, sub precibus venia ulla latet, spes pascis inanes." For myself, I can only repeat, that I have given my best judgment to the consideration of this case, so far as the original evidence goes,

and I adhere to the opinion, already expressed, with an unfaltering confidence.

But I desire to say a few words on this occasion, as to rehearings of equity causes, in this court, upon the original evidence. They have been exceedingly rare in this court, I admit, as, in my judgment, they ought to be, unless some plain, and obvious, and palpable error, or omission, or mistake, in something material to the decree, is brought to the notice of the court, which had before escaped its attention. But if a rehearing were to be granted upon the mere certificate of counsel, who had argued the cause, that, in their judgment, the decree was erroneous, (a certificate, which, with great sincerity and readiness, would almost always be given by the counsel), it is obvious, that in the great mass of equity causes of a difficult and important nature, in this court, depending upon conflicting views of law, and also upon conflicting, and often, irreconcilable evidence, a rehearing would be almost a matter of course; and considering the vast time occupied in hearing such causes, there would be little time left for the court to devote itself to any other business, and the other suitors in the court would suffer the most oppressive delays, and often, the most irremediable injustice. Besides; it is no small recommendation of our practice, that it thereby requires, in the first instance, on the part of counsel, a thorough examination and preparation for the hearing; and on the part of the court, a most solicitous, and exact study of the whole cause, before the judgment is pronounced. The other course would encourage inattention or indifference, and induce the counsel, as well as the parties, to speculate upon contingencies, and to argue the cause at large, only, when the court had delivered the result of its opinion. On all these accounts, it has been the constant habit of the supreme court of the United States, to refuse rehearings of any cause, after it has once pronounced its own judgment, whatever might be the conflicts in the evidence, or the differences among the judges themselves, as to the merits of the controversy.

I am aware of the English practice on this subject. It has guards, which do not, and cannot exist here, where the counsel and the client are brought into immediate and constant contact with each other. But such as is the practice in England, it is a source of almost infinite delays and inconveniences; and under a chancellor, like Lord Eldon, whose mental constitution led him to cherish interminable doubts, and to court rehearings, it must be a source of irreparable mischiefs, and sometimes of unmitigated ruin. I have no desire to introduce such a practice into this court. When a cause has been once fully argued in this court, and an appeal lies from its decree, there is, ordinarily, no reason for a rehearing here upon the original evidence; and if such a practice is to be introduced, it must be by the will and judgment of some one, who shall succeed me. If rehearings are to be had, until the counsel on both sides are entirely satisfied, I fear, that suits would become immortal, and the decision be postponed indefinitely.

The present application, if maintainable at all, should properly, in its prayer, be for leave to file a supplemental bill, to bring forward the new evidence, and for a rehearing of the cause at the time when the supplemental bill should also be ready for a hearing. See Baker v. Whiting [Case No. 786]. In my judgment, it would be against the settled principles and practice of courts of equity, to allow the new evidence to be brought forward by a mere order upon the petition; and, indeed, in this stage of the cause, wholly irregular to admit it, except upon a supplemental bill, where testimony could be taken on both sides, to meet the new exigencies of the case. The general rule is, that, upon a rehearing, no evidence can be gone into, which was in the case at the original hearing, and capable of being then produced. But where evidence in the case was omitted to be read at the original hearing, such, for example, as a document, or where the proof of an exhibit in the original cause was omitted, the court will make an order, allowing them to be read, or proved, saving just exceptions. See 3 Daniell, Ch. Prac. pp. 125, 126, c. 28, § 2; Walker v. Symonds, cited 1 Mer. 38, note; Gilb. Forum Rom. 183; Wood v. Mann [Case No. 17,953]. If there are any decisions, carrying the practice beyond this line, I am not prepared to admit their correctness or authority. The cases of Wright v. Pilling, Finch, Prec. 494, and Hedges v. Cardonnel, 2 Atk. 408, are very loosely reported and distinguishable; and it may well be doubted, if the new evidence, there spoken of, was any thing more than what was not, in fact, read or used at the former hearing, but was actually in the case. See 3 Daniell, Ch. Prac. 124. Dashwood v. Bulkeley, 10 Ves. 230, 238, and White v. Fussell, 1 Ves. & B. 151, decide nothing on the point. Wood v. Griffith, 1 Mer. 35, is the other way. In Williams v. Goodchild, 2 Russ. 91, Lord Eldon said, that the difference between a rehearing and an appeal was this, that, upon a rehearing, you might read evidence, which had been collected before the hearing, though it was not read at the original hearing; but that, upon an appeal, you could only read that evidence which you had read below. Higgins v. Mills, 5 Russ. 287, was merely an allowance of liberty to prove viva voce an exhibit, upon an appeal from the rolls, which is but a rehearing, before the lord chancellor.

In some cases, too, where by a mistake or slip of the solicitor or counsel, a document has not been proved at all, or not

proved by competent evidence, leave has; under very special circumstances, been granted, to exhibit an interrogatory for that purpose. To this effect is Cox v. Allingham, Jac. 337, where the master of the rolls (Sir Thomas Plumer) "stated his strong impression of the dangers, which would arise, if, in every instance, a party, whose case broke down at the hearing, were to be at liberty to go into further evidence. To encourage it would be to subvert the whole practice of the court." Other cases will be found in Seton, Decrees, 363, note, and in 2 Daniell, Ch. Prac. 416, 417. Lord Cottenham, in Marten v. Whichelo, Craig & P. 257, alluded to those cases, and said, that it was utterly impossible to reconcile the cases, or to extract any principle, upon which any fixed rule can be founded; and in the case before him, (and it is a very strong illustration of the general doctrine), he utterly refused leave to supply the defect of the evidence, at the hearing of the debt of the creditor, (it was a creditor's bill), against the devisees of the estate, the debt having been, as to the executor, taken pro confesso, and would not allow the defendant to go into new evidence against the devisees, but dismissed the bill.

The present application steers wide of all the cases, where leave has been given to supply defects of evidence at the original hearing, upon a rehearing, by new interrogatories, upon mere petition. As has been already remarked, it can be done only by leave to file a supplementary bill, and then must proceed in the usual manner.

The real question, therefore, for the consideration of the court, is, whether leave should be granted to file a supplemental bill to bring forward the new evidence. In substance, there is no difference between this case and the case of leave to file a bill of review, or a bill in the nature of a bill of review, except, that the latter is solely applicable to cases where there has been a final decree; whereas applications, like the present, may be before or after an interlocutory decree. But the doctrine of the court, as to the nature of the evidence, which will justify and support the application, is, in each case, substantially governed by the same considerations, and limited by the same rules. I had occasion to consider this subject with a good deal of attention in the case of Baker v. Whiting [Case No. 786], and with the opinion then expressed, I am entirely satisfied.

Much of the evidence, which is now offered in support of the petition, has been extracted from the testimony of the witnesses, given before the master, who were examined in the original cause; and to the same points which were then in issue, and constituted the basis of the interlocutory decree. To the admission of all this evidence, an objection, preliminary in its own nature, has been addressed to the court; and that is, that it

was totally improper and irregular, to examine any witness, who has been once already examined in the cause, before the hearing, without a special order of the court; and such an order, when obtained, is limited to such facts as were not testified to by the witnesses, and not then in issue. The general rule certainly is, that witnesses already examined in the cause, cannot be again examined before the master, without leave of the court for this purpose. This rule was laid down by Lord Bathurst in Browning v. Barton, 2 Dickens, 508, and was fully recognized by Lord Thurlow, in Sawyer v. Bowyer, 1 Brown, Ch. 388, 2 Dickens, 639, and in Vaughan v. Lloyd, 1 Cox, 312, 313, who, on this last occasion, gave the reasons for it. He there said, "the question is, whether the court has not taken the precaution of making it necessary for the party, in that case, to apply for leave of the court; which leave the court will certainly grant, wherever the substantial justice of the case requires it; but will put the party under the terms of having the interrogatories approved and settled by the master, who, in so doing, will take care, that the same witness is not a second time examined to the same facts, not only to prevent the parties from being loaded with unnecessary expense, and the cause with useless depositions; but, what is still a greater object, to avoid the danger of perjury, which would be incurred by a witness deposing a second time to the same fact, after having seen where the cause pinched, and how his testimony bore upon it;" and he accordingly suppressed the depositions taken before the master. See, to the same point, Smith v. Graham, 2 Swanst. 264; Rowley v. Adams, 1 Mylne & K. 543; Birch v. Walker, 2 Schoales & L. 518; Willan v. Willan, 19 Ves. 590, 592. To the observations made by his lordship, it might be added, that the practice would go to the utter subversion of the rule, which prohibits new evidence and new testimony, of the old witnesses, after publication of the testimony. See Willan v. Willan, 19 Ves. 590, 592; Wood v. Mann [Case No. 17,953]; Whitelocke v. Baker, 13 Ves. 512.

It has been suggested at the bar, that the rule has been broken in upon, upon several occasions, and several cases have been cited in support of the suggestion. But, upon examination, they will all be found to turn upon special circumstances. None of them show, that the witnesses can be again examined to the same matters contained in their former depositions, but only to collateral and independent matters. Courtenay v. Hoskins, 2 Russ. 253, was a case where a witness, examined at the hearing to prove exhibits, was admitted to prove other exhibits before the master, without an order. Metford v. Peters, 8 Sim. 630, was to the same effect. So is Birch v. Walker, 2 Schoales & L. 518. In Whitaker v. Wright, 2 Hare, 310, 321, the question arose upon

an application for an order to re-examine the witness upon a point not previously in issue in the cause. It was the case of a creditor's bill, where the practice of the court allowed the parties to make a new and distinct case before the master. In Rowley v. Adams, 1 Mylne & K. 543, the circumstances were so special, that no conclusion can properly be drawn from that case to govern others. In that case, however, the master of the rolls (Sir John Leach) fully recognized the general rule.

But, passing from this point, not, in my judgment, unimportant for the deliberate consideration of the court, let us look to the general nature and objects of the new evidence now offered. In the first place, it goes solely and exclusively to matters already in controversy, and in issue in the cause, upon which evidence was taken on both sides. That evidence was fully sifted, and discussed at great length, and in the most minute details, at the original hearing. The evidence was conflicting, and, in some cases, irreconcilable, and the court arrived at its own judgment upon a survey of all the circumstances, and balancing the weight of the testimony at every step. What the defendant, in effect, now proposes, is to open the whole case anew; to adduce new evidence to the main points in controversy; to supply the defects and omissions in his former evidence; and to shake, and, as he hopes, to overturn, the testimony on behalf of the plaintiff. It is, in fact, therefore, an effort to open the whole matter anew, upon all the main facts and circumstances of the case, and to reargue, and to rejudge the whole case, upon new evidence, partly argumentative, and partly presumptive,—partly oral, and partly documentary; but, whether of the one character or the other, it establishes no new fact, of itself decisive of the merits of the cause, and necessarily changing the original decree; but it is merely corroborative or auxiliary to what is now in the cause. Such an application is certainly novel in a court of equity, and if maintainable in the present case, it goes to the full extent of changing the whole course of practice in courts of equity, and of subverting all the old rules and qualifications, as to the admissibility of new evidence. Irregular and unsatisfactory as some of the authorities are upon this subject, none of them affect to entertain or support so broad a doctrine.

And this leads me to remark, in the next place, that the new evidence, upon which a supplemental bill should be allowed to be filed, should not be of a mere cumulative or corroborative nature; for if it were admissible, then, it would be open to the other side to impeach or control it, by other cumulative or corroborative evidence on that side; and thus, all the mischiefs would be introduced, against which the general rule prohibiting the examination of new witnesses, after publication of the testimony, was intended to guard. The doctrine has been fully recognized, as to new evidence upon bills of review, and the same reasons must apply to supplemental bills. Blake v. Foster, 2 Ball & B. 457; Young v. Keighly, 16 Ves. 348; Baker v. Whiting [Case No. 786]; Norris v. Le Neve, 3 Atk. 26, 36, 37; Hind. Prac. 59. Gilbert, in his Forum Romanum (page 186, c. 10) manifestly supports this view of the matter. Mr. Chancellor Kent, in Livingston v. Hubbs, 3 Johns. Ch. 124, seems to have acted upon, and enforced the same doctrine. In Dexter v. Arnold [Case No. 3,856], and Baker v. Whiting [supra], and Wood v. Mann [Case No. 17,953], this court had occasion to examine and review the decisions, and arrived at the same conclusion. Indeed, there is no reason to suppose that new oral testimony, going merely to corroborate evidence on one side, or to contradict evidence on the other, on the points in issue, has ever been deemed sufficient, of itself, to justify any departure from the general rule. For the most part, although perhaps not exclusively, the new evidence has been in writing, either documentary, or written statement, bearing directly on the very merits of the case, and affecting the very foundation of the original decree. Such were the cases of Earl of Portsmouth v. Lord Effingham, 1 Ves. Sr. 430; Attorney General v. Turner, Amb. 587, and Partridge v. Usborne, 5 Russ. 195; Barrington v. O'Brien, 2 Ball & B. 140; Blake v. Foster, Id. 457; and Ord v. Noel, 6 Madd. 127, 130. See, also, Taylor v. Sharp, 3 P. Wms. 371. Upon this subject, the language of the court of appeals, of Kentucky, in the case of Respass v. McClanahan, Hardin, 350, composed, as the court then was, of very able judges, is important to be carefully weighed. On that occasion, the chief justice, in delivering the opinion of the court, said: "This court, after the most careful search cannot find one case reported, in which a bill of review has been allowed, on the discovery of new witnesses, to prove a fact, which had before been in issue,—although there are many, where bills of review have been sustained on the discovery of records, and other writings relating to the title, which was generally put in issue. The distinction is very material—written evidence cannot be easily corrupted; and if it had been discovered upon the former hearing, the presumption is strong, that it would have been produced to prevent further litigation and expense. New witnesses, it is granted, may, also, really be discovered, without subornation. But they may be as easily procured by it, and the danger of admitting them makes it highly impolitic." Even for the purpose of discrediting a witness in the cause, the admission of new evidence has been limited to an inquiry into his general credit, or limited to the testimony of witnesses, who contradict his statements,—not to matters in issue, but solely to matters not

in issue in the cause, and immaterial to the merits. This was clearly laid down by Lord Eldon in Purcell v. M'Namara, 8 Ves. 324, and again recognized by him in Carlos v. Brooke, 10 Ves. 49. In the latter case, he summed up the doctrine in the following expressive language: "I think, my opinion in Purcell v. M'Namara was right. My opinion was this; that the court, attending with great caution to an application to permit any witness to be examined after publication, has held, where the proposition was to examine a witness to credit, that the examination is either to be confined to a general credit; that is, by producing witnesses to swear, that person is not to be believed upon his oath; or, if you find him swearing to a matter, not in issue in the cause, and therefore not thought material to the merits, in that case, as the witness is not produced to vary the case in evidence by testimony, that relates to matters in issue, but is to speak only to the truth or want of veracity, with which a witness had spoken to a fact, not in issue, there is no danger in permitting him to state, that such fact, not put in issue, is false; and, for the purpose of discrediting a witness, the court has not considered itself at liberty to sanction such a proceeding as an examination to destroy the credit of another witness, who had deposed only to points put in issue. In Purcell v. M'Namara it was agreed, that after publication it was competent to examine any witness to the point, whether he would believe that man upon his oath. It is not competent even at law to ask the ground of that opinion; but the general question only is permitted. In Purcell v. M'Namara the witness went into the history of his whole life; and as to his solvency, &c. It was not at all put in issue, whether he had been insolvent, or had compounded with his creditors: but, having sworn the contrary, they proved by witnesses, that he, who had sworn to a matter not in issue, had sworn falsely in that fact; and that he had been insolvent and had compounded with his creditors; and it would be lamentable, if the court could not find means of getting at it; for he could not be indicted for perjury, though swearing falsely: the fact not being material. The rule is, that in general cases the cause is heard upon evidence given before publication; but that you may examine after publication, provided you examine to credit only; and do not go to matters in issue in the cause, or in the contradiction of them, under pretence of examining to credit only." See, also, S. P., White v. Fussell, 1 Ves. & B. 151, 153. The same doctrine was held by Mr. Chancellor Kent in Troup v. Sherwood, 3 Johns. Ch. 558; and by this court in Wood v. Mann [supra].

So that, I think, it may be taken as the first result of all the authorities, or, at least, of those, which ought, upon such a subject, to have a controlling influence, that new oral evidence, merely corroborative or cumulative, is not a sufficient foundation for a supplemental bill, nor within any of the exceptions allowed to the general rule.

To what has been already suggested, it may be added, that the evidence, entitling the party to ask leave of the court, to file a supplemental bill, should not only be true, but should be material, in- an emphatic sense; that is, it should be such new matter, as must, if unanswered, in point of fact, either clearly entitle the party to a reversal of the decree, or raise a case of so much nicety and difficulty, as to be a fit subject of judgment in the cause. In other words, it should furnish a just and solid foundation, upon which the court may properly repose its judgment. It is not sufficient, that it is such, as might be argued, with more or less effect, by way of a presumption against, or in favor of former testimony. But it should go further, and demonstrate, that, consistently with it, the decree ought not to stand. So Sir John Levet seems to have understood the rule in Ord v. Noel, 6 Madd. 127, 131, and so he interpreted the decision in Norris v. Le Neve, 3 Atk. 26.

In the next place, leave is never given to file a supplemental bill, in order to admit new evidence, after an interlocutory decree, where the party might, by due diligence, have introduced it originally into the cause, or had full and ample means of knowledge of it, within his reach. It matters not, that he, or his solicitor or counsel, did not understand the true value or importance of it, if they knew the facts, or had ample means of knowledge, and a fortiori, if, by the very nature and character of the matters put in issue, they were bound to search, and to make full and perfect inquiries. The authorities are very numerous and pointed to this effect. But it will be sufficient, upon such a subject, to refer to a few leading authorities. In Young v. Keighly, 16 Ves. 348, 353, Lord Eldon said, that in cases of this sort, the question always is, not what the plaintiff knew, but what, using reasonable diligence, he might have known. Norris v. Le Neve, 3 Atk. 26; Whitelocke v. Baker, 13 Ves. 511; Bingham v. Dawson, Jac. 243; Barrington v. O'Brien, 2 Ball & B. 440; and Blake v. Foster, Id. 457, 461,—are to the same effect. Mr. Chancellor Kent fully recognized the same doctrine in Wiser v. Blachly, 2 Johns. Ch. 488, and Hamersley v. Lambert, Id. 432, 436; and in Livingston v. Hubbs, 3 Johns. Ch. 124, 125, the same learned judge said, (which is very pointed to the present case): "The defendant was charged in the bill, with gross misrepresentations on that point, and the charge was denied on the answer, and put at issue. The defendant's attention was called to the very fact, and he was bound to use reasonable diligence in bringing forward his proof on that point." In Dexter v. Arnold [Case No. 3,856] the authorities were much considered, and the like conclusion was adopted—and it was followed out in the analogous case of taking new evi-

dence after publication of the testimony, in Wood v. Mann [supra]. There is, also, in the case of Respass v. McClanahan, Hardin, 352, 354, which has been already referred to, another highly important remark, illustrative of the doctrine just stated. The court there said: "We will add, that there is an important difference between the discovery of a matter or fact itself, which, though it existed at the former hearing, was not then known to the party to exist, or which was not alleged, or put in issue by either party, and the discovery of new witnesses or proof of a matter or fact, which was then known, or in issue. In the former case, the party, not knowing the fact, and it not being particularly in issue, there was nothing to put him in the reach, either of the fact or the evidence of the fact; and, therefore, the presumption is in his favor, that as the matter made for him, his failure to show the matter was not owing to his negligence or fault. But where the matter was known, or put in issue, the party is put upon the investigation, and the presumption is strong, that, by using due diligence, he might have shown the truth of the matter, on the former hearing."

These are some of the principles, which I have thought it right to bring under review, upon the present occasion, with reference to the point, now under consideration, as to the general nature and object of the new evidence.

The new evidence naturally divides itself into two heads: (1) Oral; and (2) documentary. In one part, it is addressed to the establishment of a fact, (a date), supposed to be material in the cause, and the groundwork of the interlocutory decree. In another part, it is addressed to the credit, or rather the discredit, of certain of the plaintiff's witnesses. Two other points are avowed to be in the view of the counsel for the defendant; the first to establish, that the decree in the case of Jenkins v. Deblois [unreported], mentioned in the pleadings and evidence, was not a decree by consent; the second, to establish, that the value of the property, at the time, was far below what it was supposed to be at the original hearing. Now, I repeat it, there is not a single one of all these four points, which was not on issue in the original cause, and to which evidence was not taken, and upon which most elaborate and protracted arguments were not had at the bar, at the original hearing. It has been suggested, that the counsel of the defendant did not, at the hearing, attach so much importance to these matters, as they now do, and did not then so fully comprehend their weight with the court. What possible influence such a suggestion should have upon the mind of the court may be answered by the cases of Norris v. Le Neve, 3 Atk. 26, 35, 36, and Young v. Keighly, 16 Ves. 348, and Blake v. Foster, 2 Ball & B. 457. However correct they may be, in the particular case, the court could not yield to them, without a departure from what

the settled practice of the court requires.

Connected with this, I may allude to a matter, brought forward by the supplemental petition of the defendant. It suggests, that the ill-health of counsel did not, in effect, enable him to have the full benefit of their assistance and learning, as he could have desired, or they, under other circumstances, could have given in the cause. But although the ill health of the counsel was known and regretted by the court, yet the cause was not called on for argument, until full time for preparation, and after the counsel, who argued the cause, was enabled to perform the entire duty without objection. If he had requested further time, upon the ground of want of preparation, under the circumstances, the court would certainly have acceded to the request. And I may now add, that upon the state of the record, as it was then presented, and no intimation was then given of any desire to file a supplemental bill, the argument was as copious, and able, and thorough, both as to the facts and the law, as it seemed to the court, as it probably could be. Nor have I, at the present argument, heard any suggestion founded upon that record, which was not largely discussed and fully considered at that hearing. If the court were then wrong, after such an argument, so powerfully urged, it seems to me, that the appropriate redress belongs to the highest appellate court, and can hardly be found on any re-argument here.

But to return to the more direct questions before the court. Some considerable portion of the evidence, now sought to be introduced, respects the supposed date of the agreement between Jenkins and Eldredge, and that it was not before, but after the expiration of the time fixed on the decree in the case of Jenkins v. Deblois; and great stress is laid upon this fact, as having a most material bearing in the case. The very point was directly put in issue by the pleadings, and it was fully argued at the original hearing, upon the record; and certainly, so far as the fact could be material, it was within the reach of the defendant, Eldredge, (for all the means of ascertaining were completely open to him), before the hearing as afterwards,—I do not say, by the exercise of great diligence, but by the exercise of any diligence. As the record stood, it appeared to me, that the negotiations were begun, before the time expired, even if the agreement was not then completed. But whether the agreement was then completed or not, was not, in my judgment, material; and I should have come to the same result (and so the opinion intimates, as far as it goes), whether the fact were the one way or the other. For whether Jenkins had, at the time of his agreement with Eldredge, any legal or equitable title in the property against Deblois, or not, he might well believe, that he had an honorary confidence, that Deblois would grant indulgence to him, if he could in any manner satisfy her claim, in the nature of a good will; and there

is not a tittle of proof in the case, that Deblois would have arranged any bargain with Eldredge, if not done with the co-operation, and at the solicitation of Jenkins. In my judgment, therefore, the posture of the case, as between Jenkins and Eldredge, is not, and would not be, in the slightest degree, varied by the fact, whether the agreement between them was consummated before or after the expiration of the time. In each case, their agreement, whenever made, must receive the same interpretation, taken in connexion with the other circumstances of the case.

Then, again, it is argued, that the new evidence will show, that the decree in the case of Jenkins v. Deblois, was not a decree by consent, but in adversum. Now this point, also, was fully argued at the original hearing; and, so far as it could be material, it was fully within the power of Eldredge to have made the fact certain, before the publication of the testimony. Certainly, at the original hearing, I was satisfied, that the fact must have been, that the decree was by consent. The very terms of it seem to me necessarily to so import; nor am I able to conceive, that any court of equity, at that stage of the cause, could make such a decree, unless by consent. What was the stage of the cause? It was not a case set down for a final hearing upon the merits, after issue, and all the evidence had been taken in the cause. It seems to have been an application to dissolve the injunction, which had been already granted, and which certainly the court could continue or not, and upon what terms it might choose, until the final hearing —and the decree then purporting to be interlocutory, continues the injunction to the hearing, if the stipulated conditions are complied with; if they are not, then the bill is to be dismissed. Now, unless by consent, the court could not, according to any rules or doctrines known to equity proceedings, dismiss the bill before the hearing, although it might dissolve the injunction before the hearing. To dissolve the injunction is one thing,—to dismiss the bill, before the hearing, on the merits, is quite a different thing. In short, under such circumstances, Jenkins had a right to a hearing on the merits, after issue and evidence taken, unless he consented to waive his right. I go farther, and add, that, under the circumstances of the case, without such consent, the dismissal of the bill would not be a bar to a subsequent bill in equity, for the same matter; for a decree, to be a bar, must be upon the merits, after the hearing thereof.

Thus much I have thought it right to say upon this point. But, in truth, my judgment never rested upon it, except so far as the argument insisted, that it was a complete bar to all legal and equitable claims, on the part of Jenkins, against Deblois, a conclusion which I was not at all disposed to concur in, or adopt.

Then, as to the point of the value, or sup-posed value of the property, at the time of the agreement or the decree, that matter was also argued at the hearing, and constituted a signal part of the defence. Upon this subject, every fact was open to complete proof, before the publication of the evidence; it was put in issue by the parties, and it cannot be, that Eldredge is here to be at liberty to offer new proof of facts, which were then completely before his eyes, and of general notoriety.

What then is the new documentary proof proposed to be offered, in support of the petition? As I gather from the petition, and the statements on both sides, it consists of two letters, written by Mr. C. G. Loring, which have always been in Eldredge's possession,—(and which are now offered to refresh his memory as to a date) of the book, or memorandum, of accounts, and business, kept by Joseph Jenkins, Jr., which was referred to by him in his deposition, and the production of which was not (as far as appears upon the record,) asked for by Eldredge, either at, or before the original hearing, nor by any motion made to the court therefor, at any time until the hearing before the master; of the memorandum of an account of Eldredge, in his own possession, and produced at the hearing, under a suggestion of the court, at the motion of Jenkins; and of a paper, or written promise, given by Jenkins to Eldredge, and well known to the latter, and of which the production by Jenkins might have been compelled by a cross bill, or by an order to produce it at the original hearing.

Now, in respect to all this documentary evidence, it is perfectly clear, that any portion of it was within the power of Eldredge to produce, or to have had produced, before publication, or, at all events, before the cause was set down for a hearing. It was matter put directly in issue by the pleadings. No application was ever made by him to enlarge the time for publication of the testimony; no special order was asked of the court, to require the production of the book of accounts, and business, of Joseph Jenkins, Jr., or of the written statement, in the possession of the plaintiff Jenkins. No cross bill was ever filed. The publication of the testimony took place in May, 1843. Joseph Jenkins, Jr., died in the autumn of the same year. The cause was afterwards set down for a hearing; but was not argued until the latter part of April, 1844, and the argument then occupied the court (as nearly as I can recollect,) about seven or eight days. So that, I think, it is impossible not to say, that Eldredge was entirely content to leave his case, up to the very time of the argument, without the slightest effort to add any of this documentary proof to that already in the cause. He asks the court, at this late period, to reopen the whole cause, that he may supply any and all defects in the evidence, which he now, after the fullest

discussion, supposes may be material to his case. I think, that it may be said, without hesitation, that such an application, so broad and so unqualified, has never before been presented to any court of equity, and it would amount to a subversion of its whole established rules of practice.

In respect to the letters of Mr. Loring, as to the matter of date, they are not, in my judgment, material; and if they were, what ground is there to say, that Eldredge should now be permitted to bring new documents before the court, which were always in his custody? It is no answer to say, that he did not then deem them material. It was his own choice, or his own wishes, not to produce them, or use them, when, by law, their use might have been required and allowed. In respect to the book of accounts and business, of Joseph Jenkins, Jr., let it be remembered, that if its production had been positively required, (and an order from the court might have required it.) it would have been open to the witness to have produced the book, and explained what he meant, and to have corrected the error, if any, or to have shown, that the imputations upon his veracity were unfounded. But he is dead; and the court is now called upon to rake open the ashes of the dead, and, when the voice of the departed is hushed, to interrogate, to his dishonor, if not to his infamy, the naked pages of the book, unexplained and unaided by collateral circumstances. I do not say, that a court of equity is positively precluded from such a course, under all and any circumstances. But I should be loth to break in upon the settled practice of the court, designed to guard the living, and, a fortiori, to protect the dead from attacks, which it may no longer be in their power to repel. The testimony of Joseph Jenkins, Jr., was most powerfully assailed at the argument; but it seemed to me, that, as to the leading facts, upon which my judgment proceeded, it was entirely supported by other independent facts and circumstances.

In respect to the oral evidence, so far as it has not been already commented on in the preceding remarks, it goes entirely to discredit the testimony of the witnesses, on the part of the plaintiff, on their original examination; and especially to the testimony of Mr. Hilliard, and James W. Jenkins, not by showing, that they are persons of notoriously bad character, and not to be believed on their oaths; but by means of new evidence to the very facts, to which they were originally examined, that they have been guilty of gross misstatements, if not of deliberate falsity. The facts are to be made out in respect to Mr. Hilliard, by proving the time when he hired his office, etc., through testimony, which was just as much within the reach of Eldredge, at the time of his examination, as it now is. And it may be added, that Mr. Hilliard's testimony on this very subject, was at first as rigorously assailed at

the original hearing, as it is now sought to be. In respect to the testimony of James W. Jenkins, that is now sought to be overturned by showing, that, in his testimony before the master, he contradicted a statement he had made in his original examination. I have already had occasion to say, that nothing could have been more irregular, and incorrect, than to have examined this witness at all, before the master, without an express order of the court, which would, of course, have been limited to matters, to which he had not before testified. To give effect to such an irregular and incorrect examination before the master, would be to give to the party the benefit of violating the rules of the court. I do not stop to inquire, whether the supposed contradiction is material or not. It is sufficient to say, that it is against the rules of the court, to allow it to be deemed to be at all in the case. It ought to be suppressed.

It may be proper to add in this connexion, that, according to our practice, all the interrogatories, and cross interrogatories, designed to be put to any particular witness, are seen, and perfectly well known to both parties, long before the examination takes place before the commissioner, and not unfrequently, by a sort of mutual indulgence at the bar, the counsel of both parties are present at the examinations,—whether it was so in the present case, I do not inquire, because my judgment does not proceed upon it. But I may say, that it is rare, that any substantial defects in the material testimony are or can be found, unless there has been a want of diligence in the party, in not putting his counsel in full possession of all the merits of his cause, upon the state of the pleadings.

Without going farther into a consideration of the particulars, stated at such voluminous length in this petition, and which I pass over in silence, because, in my judgment, they are sufficiently answered in the preceding remarks, or admit of similar answers. I am compelled to come to the conclusion, that it would be an utter violation of the rules of the courts of equity to allow the present petition to prevail. There is no new evidence now offered, which, in truth, if of any value, ought not to have been originally produced in the cause; and there is none, which, with ordinary diligence, might not in due season have been produced. What Lord Eldon said in the case of Whitelocke v. Baker, 13 Ves. 511, 514, under circumstances calling for far more indulgence than the present case, admonishes me of the duty, which is imposed upon this court. His lordship, on that occasion, said: "The next ground for this motion is the materiality of the farther evidence, which it is supposed can be given. If that could be represented as most material, I dare not trust myself with laying down a precedent, that would authorize attempts to bring for-

ward an application in every case, where, even after a cause had been struck out (that cause had been struck out) the party might see, that it would not be convenient to hear the cause upon the evidence. on which he originally intended to hear it. The danger from that would be enormous." The case of Young v. Keighly, 18 Ves. 348, 351. before the same learned judge, inculcates a still more impressive lesson, for the court, in that case, rejected the new evidence, although it seemed to be the opinion of the judge, that. if admitted, it might most materially bear upon the merits of the case.

I think it my duty to dismiss the petition, and to deny the party the right to file a supplemental bill, and to have the rehearing and relief, which that petition seeks. It has been suggested, that the petition ought. if dismissed, to be without prejudice; but I think no such qualification of its effect ought to be introduced. The merits of the application, in point of law, have been as fully brought before the court, in the present case, as they could have been after a final decree, upon an application for a bill of review. If the defendant, Eldredge, has any merits. on which to found his petition in point of law, they have been as fully brought before the court, and at the proper time, as they could properly be upon a petition for a bill of review. The same questions, in the same form, necessarily arise in both cases. The defendant, Eldredge, has elected to take the course of filing his petition, and being heard, as by the course of proceedings in equity he is entitled to be heard, upon the admissibility of the new evidence, before the final decree; and, in my judgment, he is not entitled to re-argue the same questions, after the final decree, upon a petition for a bill in the nature of a bill of review. He has made his choice, and conformably to what was suggested at the hearing, he must now abide by the choice, which he has made. I feel myself bound not to open this litigation anew by any such reservation as that the dismissal shall be without prejudice.