THOMASON *v.* TRENTHAM.*

BYRD *v.* SAME.

(*Knoxville*, September Term, 1941.)

Opinion filed October 18, 1941.

---

*This case is reprinted and annotated in 138 A. L. R., 461.

J. B. Frazier, Jr., United States District Attorney, of Chattanooga, W. E. Badgett, Assistant United States District Attorney, of Knoxville, R. L. Ogle, of Sevierville, and Major G. C. Powell, of Fort Oglethorpe, Ga., for plaintiff in error.

O. M. Connatser, of Sevierville, and Charles Thomason, of Anniston, Ala., for defendants in error.

Mr. Chief Justice Green delivered the opinion of the Court.

These suits grew out of a collision between a motorcycle and a CCC truck. Two young men, Thomason and Byrd, were riding on the motorcycle. Thomason was killed and Byrd was very severely injured. Thomason's administrator and Byrd both brought suits against Trentham, the driver of the truck. There was a judgment in favor of the administrator of Thomason for $15,000. There was a judgment in favor of Byrd for $10,000, but a *remittitur* of $2,000 in his case was required by the trial judge.

The Court of Appeals reversed these judgments, sustaining an assignment of error averring misconduct of the jury. The two cases were tried together. This court granted *certiorari* and the cases have been argued here.

The Court of Appeals overruled all the assignments of error except that one charging misconduct by the jury. No petition for *certiorari* was filed by the defendant in the two cases and the only question presented to us is the validity of the assignment held good by the Court of Appeals.

It is proper to notice some expressions in the opinion of the Court of Appeals indicating doubt as to the sufficiency of the evidence to sustain the jury's verdict. Regardless of this doubt, however, the Court of Appeals found that there was sufficient evidence to sustain the verdicts and overruled the assignment of error raising that question. Our examination of the record frees us from the doubt expressed by the Court of Appeals and we agree with the trial judge that the verdicts are amply supported by the proof, although the proof is conflicting.

Passing to the question for decision, the matter regarded as material misconduct by the jury was this. On motion for new trial an affidavit was introduced from one of the jurors as follows:

"During the course of the deliberation of the Jury of which I was a member, it was said and discussed by the Jury that Calvin Trentham was unable to pay any judgment and that he would not have to pay any judgment rendered in these two cases. It was said in the course of our discussion that if the plaintiffs recovered any money it would have to be from the United States Government. Someone said that they wouldn't give a dime for a judgment against Trentham. Someone said the Government would have to pay if they got anything."

An affidavit from another juror was in these words:

"I was a member of the jury which heard and rendered a verdict August 23, 1940, in the cases 'Charles Thomason, Admr., v. Calvin Trentham' and 'L. D. Byrd, Jr., v. Calvin Trentham.' During the course of our discussion of these two cases and while we were deliberating over our verdict someone on the jury said that the plaintiffs were government employees and the defendant was a government employee and that they supposed they all

had insurance. Someone said we could not consider that. I said 'no' we can't consider that in our verdict.''

To sustain its conclusion, the Court of Appeals cited *Street Railroad and Tel. Companies* v. *Simmons,* 107 Tenn., 392, 64 S. W., 705, 708. In that case a member of the jury made statements during their deliberation with reference to an offer of compromise made by defendants and with reference to the amount of the verdict on a former hearing of the case where there had been a mistrial. This court evidently concluded that these statements had influenced the amount of the verdict rendered, it appearing that after these statements were made, one of the jurors who had held out for a verdict of $500, agreed to a verdict of $2,500. The court cited *Sam* v. *The State,* 31 Tenn. (1 Swan), 61, and other earlier decisions handed down when the rule was that ''when improper evidence is allowed to go to the jury, it is enough that the case may have been prejudiced thereby, and the law will so presume.''

The Simmons case and all those upon which it rested were before chapter 32 of the Acts of 1911, Code section 10654. Under the Act of 1911 no appellate court may reverse ''for any error in any procedure in the cause, unless, in the opinion of the appellate court to which application is made, after an examination of the entire record in the cause, it shall affirmatively appear that the error complained of has affected the results of the trial.''

In the case before us the Court of Appeals followed the old rule instead of the statute. In concluding its opinion that court said of the statements, ''And while it does not affirmatively appear that they (the jury) were influenced by the discussions, we think the probability that they were influenced by the discussions was so strong as to approach legal certainty. We conclude that the discus-

sions were not only improper, but that they were reasonably calculated to prejudice the rights of the defendant.''

■ Under the Act of 1911, probabilities and tendencies of errors in the trial below are not to be considered grounds for reversal. There must be an affirmative appearance that the error affected the result of the trial and we think this does not here appear.

In *Marshall* v. *North Branch Transfer Co.*, 166 Tenn., 96, 59 S. W. (2d), 520, 521, referring to a ruling of the Court of Appeals which held that a juror stating in the presence of his fellow jurors something about the defendant on trial having insurance was not prejudicial error, this court said, ''We would be strongly inclined to follow this ruling of the Court of Appeals if nothing more occurred than a passing or casual reference to the fact or probability that the defendant was protected by liability insurance.'' However, in *Marshall* v. *North Branch Transfer Company, supra,* it appeared that the jury were having difficulty in agreeing as to their verdict, four members of the jury holding out against a verdict for plaintiff. Statements were then made that the defendant was protected by insurance and it was shown by uncontradicted statements of the four dissenting members that they were induced by reason of these statements to agree to a verdict for plaintiff. This court found the foregoing to be evidence of positive misconduct, affirmatively shown to have affected the result of the trial.

■ We have no such case here. One of the affidavits quoted herein shows that the jurors, when these statements were made about the Government having to pay and about the insurance, agreed that they could not consider such things in their verdicts.

So far as insurance is concerned, we take it that every intelligent juror at this date knows of the custom among

those owning automobiles to carry liability insurance. Likewise every intelligent juror must know that any payment by the Government would be voluntary—that no such payment could be enforced. We think the record as it reflects the conduct of this jury and the discussion among its members falls far short of showing that the conduct and discussion complained of affected the result below.

These were promising young men, employed by the Government at good salaries. One of them was killed and one of them very badly, and no doubt permanently, injured. There is substantial evidence to sustain the verdicts in the trial court, and the action of the Court of Appeals will be reversed and that of the trial court affirmed.