HIME *v.* SULLIVAN.

(*Jackson*, April Term, 1949.)

Opinion filed June 10, 1949.

Rehearing denied July 9, 1949.

Robert P. Adams, Trenton, for plaintiff in error.

John M. Drane, Newbern, E. H. Lannom, Union City, for defendant in error.

MR. JUSTICE BURNETT delivered the opinion of the Court.

Mrs. Sullivan, as the administratrix of the estate of her deceased daughter, instituted this suit for the wrongful death of her daughter against W. A. Adams, owner of a taxicab and Richard E. Pierce the driver or operator of said cab and against W. F. Hime and Reid Hime.

In the first trial of this case the jury returned a verdict in favor of the plaintiff against Adams & Pierce for $10,000 dollars and returned a verdict in favor of the defendants, Himes. On a motion for a new trial, the trial judge set aside the verdict in favor of the defendants, Himes, and granted the plaintiff a new trial as to them. The verdict against the operator and owner of the taxi eventually became final, after its appeal, the Court of Appeals affirmed that judgment against those defendants. No petition for *certiorari* was filed in that case. The case then later came on to trial before another jury as to the defendants, Himes. In this second trial the jury returned a verdict in favor of the plaintiff and against both defendants for the sum of $8,000 dollars. The Court of Appeals reversed the judgment as to W. F. Hime because the truck operated by his son Reid Hime was not being used or did not come under the Family Purpose Doctrine. No question is now made about this holding of the Court of Appeals. The petitioner here is Reid Hime against whom the $8,000 dollar judgment was rendered and affirmed by the Court of Appeals. A petition for *certiorari* was duly presented to this Court and after due consideration the same was granted and was set down for hearing. Argument has been heard thereon. We granted *certiorari*

in the first instance because under present day developments, especially in motor vehicle accidents, some of the questions here presented for determination are of apparently first impression in this State, and they are of serious importance.

The accident in which the daughter of Mrs. Sullivan met her death occurred about 10:00 o'clock at night on April 22, 1945, on U. S. Highway No. 51, in Obion County, Tennessee. At the time of the accident the deceased and her mother were in the back seat of a taxicab being operated by Pierce. The father of the deceased, the husband of the plaintiff, was riding in front with the taxi driver. They were proceeding down this highway at a rapid rate of speed and, just shortly after another car passed them going in the opposite direction, they ran into the left rear corner of the truck bed of the Himes. This truck bed was 12 feet long and $91\frac{1}{2}$ inches wide, $2\frac{1}{2}$ to 3 inches thick with a steel band or rim around it. There were no sideboards or standards around the bed. The taxicab hit the corner of this bed about the right front of the taxi sheering the taxi in two and striking the deceased, killing her almost instantly.

At the time, or just immediately before the collision, the large truck being operated in the same direction in which the taxicab was going, and as the other car passed going in the opposite direction, the Hime boy, operating the truck, apparently attempted to dim his lights and in doing so he slowed up his truck to a very slow rate of speed, probably eight or ten miles an hour, or as some of the witnesses say brought it to a stop. He gave no signals of his intention to slow up or stop.

The verdict of the jury, approved by the trial judge, is supported by material evidence of the negligence of the Hime truck and is therefore conclusive on the facts. To mention a few of these evidentiary facts of negligence we might say that there is proof in the record that the light on the rear of the truck was not burning; that it was covered with mud and that the truck bed was wider than that as permitted by statute and extended over the light to such an extent that it would make the light hard to see, if it was shining. Then too, the manner of slowing up and suddenly stopping on this main arterial highway; in view of the nature of the bed (long flat bed and very thin it would obviously be very hard for one following in the rear in the night to see this). Under these circumstances clearly the jury had material evidence from which it could reasonably draw conclusions of the negligence on the part of the Himes. As to whether or not this negligence concurred with the negligence of the taxi driver was a question for the jury. Propositions determinative of this case will be disposed of without specific reference to the many assignments of error made upon the judgment of the Court of Appeals. A verdict will not be set aside by this Court from the consideration of the facts, if there is any material reliable evidence to support it. It will not be set aside upon the ground that the weight or the preponderance of the evidence is against the verdict. *Young* v. *Cowden*, 98 Tenn. 577, 40 S. W. 1088.

One of the principal complaints made on this appeal is to the setting aside of the verdict of the jury at the first trial in favor of the Himes, and granting a new trial. It has long been settled in this State, and

can hardly be doubted, that when a Circuit Judge is dissatisfied with the verdict he must set it aside and grant a new trial. The Circuit Judge in the instant case, in setting aside this judgment, expressed the idea that he was not satisfied with the verdict and felt that the negligence of the two cars concurred in causing this unfortunate accident. He said: "and his slowing the truck and the condition of his truck and in blinking out his lights and the fact that it was nighttime and the traffic conditions that existed at the time that both Hime and Pierce were guilty of negligence contributing approximately to the injuries and death of the deceased." It was the duty of the trial judge who saw and heard these witnesses to weigh this evidence, just as the jury weighed it, and his doing so and being satisfied therewith is mainly the reason that we have repeatedly held that we will not disturb a jury verdict when supported by material evidence and approved by the trial judge.

This suit, as originally brought, was a single action against several joint tortfeasors. This single action became divided when a judgment was rendered against part of the tortfeasors and a judgment against others was set aside and a new trial granted as to them. There were then two actions against two different groups of tortfeasors. It has long been settled in this State, and practically universally, as far as we know, that joint tortfeasors are jointly and severally liable but that there can be only one satisfaction. *Railroad* v. *Jones*, 100 Tenn. 512, 45 S. W. 681; *Knott* v. *Cunningham*, 34 Tenn. 204, 205; *Snyder v. Witt*, 99 Tenn. 618, 42 S. W. 441.

Obviously, from what has heretofore been said, we have here what was originally a single action but

has now turned out to be two separate actions against two groups of tortfeasors. In one case there is a judgment against one group of tortfeasors for $10,000 dollars, and in the second action, there is a judgment against another group of the joint tortfeasors for $8,000 dollars. It is argued, and assigned as error, that the rendering of these two judgments should not have been done because it is not a joint verdict against all the alleged joint tortfeasors, because one amount was rendered in one trial and in a separate trial, yet in the same suit, another amount was rendered. This trial, of course even though it was all brought at one time against all joint tortfeasors, proceeded as if there had been separate suits brought, in other words, the separate trials are just as if the suits had been brought separately against the different groups of tortfeasors.

In Restatement Of The Law, Judgments, at page 468 it is said: ''A judgment against one of several persons each of whom is liable for the entire cause of action does not discharge any of the others unless the liability is alternative or the claim is not severable. Thus, a person is entitled to separate judgments for the full amount of his harm against any number of tortfeasors whose conduct contributes to the tort or who otherwise are responsible for it. . . . Thus, if he is awarded a small amount as damages in an action against one of a number of joint tortfeasors, he is not necessarily prevented from obtaining a judgment for a larger amount in a subsequent action against another of the tortfeasors.'' To the same effect see Volume 52 of American Jurisprudence at page 464 where it is said: ''The rule generally supported by the cases as to the conclusiveness of judgments involving joint and several tortfeasors is that

an unsatisfied judgment in one action against one or more of a number of joint and several tortfeasors is no bar to the prosecution of other actions against the other tortfeasors.''

In the instant case the record clearly shows that there was no satisfaction of the first judgment.

The identical legal situation arose nearly one hundred years ago in this State as is shown by the case of *Knott* v. *Cunningham*, 34 Tenn. 204. In this case two men were racing their horses. down a road on a bet, when they ran into a third horse and killed it. The owner of the deceased horse sued one of the racers and secured a judgment against him but was unable to collect this judgment; he then sued the other person in the race and secured a judgment against him for a different amount and it was in this suit that the case referred to, *Knott* v. *Cunningham*, *supra*, arose. In that case McKINNEY, J., speaking for the Court, said: ''This plea assumes that if an action be brought, and a judgment recovered against one of several persons who jointly committed a trespass, the judgment recovered in such case, without satisfaction, is a bar to an action against the others. And this doctrine is sanctioned by some of the authorities; but other authorities maintain, and upon sounder and more consistent principles, that a judgment against one joint trespasser, without satisfaction, is no bar to an action against a co-trespasser; and such is the settled course of decision in this State.

''The more reasonable doctrine, on the other hand is that as each of the wrongdoers is liable for his own act, separate actions may be brought at the same time, or successively, against each of the several trespassers; in each of which the plaintiff may proceed to judgment.

But as he can claim or enforce only one satisfaction for the same injury, he must elect against which of the several he will proceed to execution for the satisfaction of his damages. If the several assessments vary in amount, he may elect to take the larger sum; or if the defendants be not all solvent, he may elect to proceed against the solvent party. And such election, followed by actual satisfaction of that particular judgment, will preclude the plaintiff from proceeding against either of the other defendants, upon the judgments recovered against them, except for the costs in the respective cases, which he may enforce the collection of by execution.''

This was good horse law and is likewise good automobile law. The principle is applicable to any state of facts which present this legal situation. The question last above discussed is fully annotated in 27 A. L. R. 806, etc.; 65 A. L. R. 1087, etc., and 166 A. L. R. 1099, etc.

We pass next to the question, which is argued more at length than any other question presented by the petitioner in this case, that is, that there was material misconduct by the jury in reaching its verdict in this case. On a motion for new trial, an affidavit was introduced from one of the jurors as follows:

''During the jury's deliberation and consideration of the case, the statement was made in the jury room, in substance, that only $5,000 dollars could be collected out of Happy Adams, because that was all of the insurance that he had and after that statement was made, the jury agreed that the plaintiff should be paid, $8,000 dollars, leaving $3,000 dollars to be paid by W. F. Hime.''

This juror and seven other jurors were introduced on the motion for a new trial, and their evidence heard on

this question. The juror that made the affidavit, above quoted, reiterates on his examination what he said in this affidavit and in addition to this he said:

"Q. Now Mr. Litton, you took, an oath to try this case when you got in the jury box there and you were sworn to try the case according to the law and evidence, weren't you? A. Yes sir.

"Q. You remember that oath don't you? A. Yes.

"Q. That is what you were sworn to do? A. To the best of my ability.

"Q. Your verdict was based on the law and evidence? A. That is right.

"Q. You wasn't influenced about this insurance? A. I was not.

"Q. Not a bit? A. No.

"Q. You tried the case and passed on it on the facts didn't you and the evidence that was introduced here in court and the law. A. Yes.

"Q. And nothing else? A. Nothing else.

"Q. Nothing else? A. No."

The other seven jurors who were introduced all testified that they tried the case on the law and evidence; that they disagreed among themselves as to the amount, but all jurors, including the juror who made the affidavit above quoted, agreed; that they, as soon as they went out, agreed that there was liability; the only difference between these jurors was as to the amount that they should fix as damages for the plaintiff in this case.

Many cases are cited by the petitioner here in support of this question. It is noticed though, upon examination of these cases, that all with the exception of the case *Marshall v. North-Branch Transfer Co.*, 166 Tenn. 96, 59 S. W. (2d) 520, were decided prior to the enact-

ment of Chapter 32 of the Acts of 1911, now Code Section 10654. In view of the enactment of the Code Section last above referred to, ''probabilities and tendencies of errors in the trial below are not to be considered grounds for reversal. There must be an affirmative appearance that the error affected the result of the trial and we think this does not here appear.'' *Thomason* v. *Trentham*, 178 Tenn. 37, 41, 154 S. W. (2d) 792, 793, 138 A. L. R. 461.

In the case of *Marshall* v. *North Branch Transfer Co. supra*, this Court found from the uncontradicted statements of four members of the jury that the jury was caused to agree on a verdict against the plaintiff by reason of the statement of insurance, and this Court found that this was evidence of positive misconduct affirmatively shown to have affected the result of the trial. Under the evidence before the Court in the instant case, we certainly cannot say that there is any positive misconduct shown. If a verdict is going to be set aside because some juror says that the defendant might have insurance, then it would be impossible to get a jury verdict to stand in damage suits arising from automobile injuries because the custom of carrying liability insurance is now so common that it would be a very ignorant juror who would not know that most business men carry automobile insurance.

In the instant case, without doubt, it is shown that the jury agreed as to liability; the only argument between them was as to amount. Of course it is perfectly human and natural that in trying to amalgamate their differences on this question, that various and sundry jurors would argue this and that and the other thing. But as long as they eventually arrive at an amount and

all agree to it, and so report, as they did in this instance, we can not think that there is any misconduct on their part, so as to vitiate a verdict, in the view of the Code Section above cited. The case now before us is indeed very analogous to the case of *Thomason* v. *Trentham*, *supra*, and we think that one reading that case can very easily and clearly see the similarity. In that case, this Court, speaking through the late CHIEF JUSTICE GREEN, reversed a judgment of the Court of Appeals and held that a similar affidavit to that herein, under similar facts, did not constitute positive error and therefore that the verdict of the jury should stand.

Many assignments are made here, and were made in the Court of Appeals to the failure of the trial court to give numerous special requests offered on behalf of this defendant. We have considered each and every one of these special requests, all of which, it is true, state good concrete propositions of law and might and would be applicable under proper circumstances. We have very carefully, and after many days of examination and study of this large record, and particularly of the charge herein, concluded that there is no error in failing to give any one of these special requests. The charge of the Court as a whole is fair and fully covers all propositions. Therefore these assignments must be overruled.

It is very forcefully argued that the trial court erred in failing to give the following special request:

"I further charge you that the remote cause of an injury is that which may have happened and yet no injury has occurred notwithstanding that no injury could have occurred if it had not happened."

This is a correct statement of the law. In failing to so charge the law of remote negligence did the trial court commit prejudicial error?

We have very carefully considered the charge of the court. It is an excellent one and fully covers all pertinent matters on which a jury should be charged in this kind of a case. In several instances, in the charge, the jury was told that in order for Reid Hime to be liable he must "be guilty of negligence contributing concurrently and contributing proximately to the accident, . . . with the negligence of Richard Pierce." They were told that if "his negligence was not the direct and proximate cause of, nor contributed concurrently and proximately to the accident . . . your verdict will be for the defendants," . . . And again they were told: "if you find the defendant, Reid Hime, was guilty of some negligence, but that his negligence was not the direct and proximate cause of, nor contributed concurrently and proximately to the accident . . . your verdict will be for the defendants," . . .

The main charge also contained the following:

"Proximate cause may, in general, be stated to be that act or omission, which immediately causes or fails to prevent the injury: an act or omission occurring with another, which, had it not happened, the injury would not have been inflicted.

"It is the cause of which the injury is a natural and probable consequence, such a consequence as under the circumstances might and ought to have been foreseen by the wrongdoer. It does not necessarily mean that which is last in time or place, but means that which is the procuring, efficient and predominant cause of the accident."

In view of the above excerpts from the Court's charge, we can see no reason nor necessity to charge the special request above quoted. The jury was fully instructed as to negligence and the necessity of the negligence of the defendant being the proximate and concurring cause before he could be held liable. The very essence of the charge is that if the negligence of the defendant was remote he would not be liable. This was just another way of doing what this instruction asked.

Some of the special requests referred to are based on the rule of law as laid down by this Court in *West Construction Co.* v. *White*, 130 Tenn. 520, 172 S. W. 301: *Knoxville Railway & Light Co.* v. *Vangilder*, 132 Tenn. 487, 178 S. W. 1117, L. R. A. 1916 A, 1111. The rule as established and laid down by these cases is that where a person drives an automobile at night in a dark place so fast that he cannot stop or avoid an obstruction, within the distance lighted by his lights, is guilty of contributory negligence which will bar his recovery. This rule as established by these cases and others is not applicable herein. This is not an action by the owner of the taxicab against the truck driver but is an action by the guest of the taxi driver against the truck driver. The Court in the instant case properly instructed the jury as to the duties and responsibilities of this guest and if she or the deceased person were guilty of contributory negligence etc., she could or could not recover. But it seems to us that the case of *Knoxville Railway & Light Co.* v. *Vangilder, supra*, is authority for the plaintiffs herein rather than for this petitioner. In the *Vangilder case*, Mr. Vangilder was driving his car and Mrs. Vangilder was riding with him. The Court in this case held that the negligence, which barred Mr.

Vangilder's recovery, was not attributed to Mrs. Vangilder, and allowed a recovery on her behalf. It, therefore, would seem that this case is authority in favor of the plaintiffs rather than this petitioner.

It is very vigorously argued that the unreported case of *Richardson* v. *Southeastern Motor Truck Lines, Court of Appeals,* is authority supporting the petitioner's contention that the negligence of the taxi driver was the sole cause of the accident. In the case referred to the Court held that the negligence of the plaintiff's intestate was the proximate cause of the accident. In the opinion of the Court there was no negligence on the part of the defendant that would allow the matter to go to the jury. We have pointed out a different situation here.

So far as we can find, there is no evidence of any negligence on behalf of the plaintiff's intestate in this action. The negligence complained of by this petitioner is the negligence of the taxi driver and not that of the plaintiff's intestate. Where there is, as we have indicated above, material evidence of negligence of these two parties, it is always for the jury to determine whether or not it was the negligence of the one or the other or the combined negligence that caused the injury. The trial judge cannot take the matter from the jury unless he is satisfied that there is no disputed question of fact as to what caused the accident; that the evidence is reasonably susceptible of but one inference, that is, that the negligence of the party charged, undisputedly could not be considered a contributing factor to the accident.

Of course we keep in mind that the plaintiff's intestate was a guest in the taxicab over which she had no authority or control. It was her duty to exercise ordinary care for her own safety and if she failed to do

this she would have been guilty of negligence as the trial court charged the jury.

We have very carefully considered every error assigned herein and likewise the opinion of the Court of Appeals, which takes up *seriatim* the thirty assignments of error made in that Court, most of which are reiterated here on this petition and in oral argument before us. We are satisfied that the Court of Appeals in ruling on each of these errors, not heretofore commented on, has correctly stated the proper conclusion and its reasoning therefore is sound and supported by authority. We therefore concur in the opinion of the Court of Appeals on these various assignments not herein mentioned.

For the reasons heretofore set forth the judgment of the lower courts must be affirmed.

## On Petition to Rehear.

A petition for a rehearing is filed herein based largely on a reargument of matters heretofore argued which have been very carefully considered by us before reaching the conclusions and findings as set forth in our original opinion. The present petition also challenges certain findings and conclusions we have reached. We have again thoughtfully considered these matters and feel that under the facts as herein presented we are correct.

See Rule 32 of this Court as found in 185 Tenn. at page 879. Of the authorities there cited the quotation following is apropos of many of the requests set forth in the petition. " 'During a pretty long period of judicial life', said Mr. Justice Story, in *Jenkins* v. *Eldredge,* Fed. Cas. No. 7,267, 3 Story 299, 'it has been my misfortune on many occasions to have differed widely from

counsel on one side or the other, in important causes, as to the merits thereof. But this, although a matter of regret, could not, as it ought not, in any, the slightest degree, influence the duties or judgment of the court. The asseverations of counsel, however solemn, have nothing to do with the facts or merits of causes before the court; and if any judge could be so unstable in his views, or so feeble in his judgment, as to yield to them, he would not only surrender his independence, but betray his duty. However humble may be his own talents, he is compelled to treat every opinion of counsel, however exalted, which is not founded in the law and the facts of the case, to be voiceless and valueless. . . . They (rehearing) have been exceedingly rare in this court, I admit, as, in my judgment, they ought to be, unless some plain, obvious and palpable error, or omission, or mistake, in something material to the decree, is brought to the notice of the court, which had before escaped its attention. But if a rehearing were to be granted upon the mere certificate of counsel, who had argued the cause, that, in their judgment, the decree was erroneous (a certificate which, with great sincerity and readiness, would almost always be given by the counsel), it is obvious that in the great mass of equity causes of a difficult and important nature, in this court, depending upon conflicting views of law, and also upon conflicting and often irreconcilable evidence, a rehearing would be almost a matter of course; and, considering the vast time occupied hearing such causes, there would be little time left for the court to devote itself to any other business, and the other suitors in the court would suffer the most oppressive delays, and often the most irremediable injustice. . . If rehearings are to be had until the

counsel on both sides are satisfied, I fear that suits would become immortal, and the decision be postponed indefinitely.' '' Fed. Cas. No. 7,267, 3 Story 299.

The petitioner makes the statement that: ''The Court of Appeals held that where a trial judge granted a new trial, that an Appellate Court could not review his action in so doing'' and that ''if that is the law in Tennessee today, then a wayside bill of exceptions, . . . is meaningless.''

 In approving the opinion of the Court of Appeals on this point we did not nor do we so construe their holding. As we view their holding it was that it is the duty of the trial judge, sitting as a 13th juror, to grant a new trial if he is not satisfied that the evidence preponderated in favor of the verdict of the jury and that the Appellate Court has no power to act until the trial judge has in fact approved the verdict of the jury. This is a correct view point. *Carter* v. *Pickwick etc.*, 166 Tenn. 200, 60 S. W. (2d) 421. The Court of Appeals did then consider the evidence and determined that there was material evidence showing concurrent negligence on the part of this petitioner on which the trial judge based his conclusion.

The petitioner says:

''And again, error was assigned in the Court of Appeals to the effect that it committed error in adding interest on the judgment against this petitioner. This Honorable Court did not comment upon that assignment.''

In answer to this assertion the respondent says:

''The question of interest came about in the following manner:

''There was an error by the clerk of the court of appeals in calculating the interest on the judgment when

it was entered in that court, *apparent upon the face of the record.* When this error was discovered by the respondent's attorneys a petition was filed to correct same. An answer to this petition was filed by the plaintiff in error Hime and the Court of Appeals held that the petition was properly filed to correct the judgment and the correction was accordingly made.

"It was insisted before the Court of Appeals that the interest on the judgment against Adams and Pierce in this case had been waived consequently this relieved the petitioner Hime from interest on the judgment against him.

"On the trial of this case in the circuit court Mr. W. M. Miles, Esq., Attorney of the Obion County Bar, who represented Adams and Pierce in this case, was called to the witness stand by defendant in error, plaintiff below, for the purpose of having the record show that nothing had been collected on the judgment against Adams and Pierce. It developed that Mr. Miles was discussing the question of paying $5,000 in satisfaction of the judgment insofar as his insurance company was concerned with Mr. E. H. Lannom, one of the Attorneys for the plaintiff below. Mr. Miles testified that he was bluffing but did offer to pay $5,000 in full amount of coverage by his insurance company which Mr. Lannom declined to accept, and the matter of interest was mentioned between them and Mr. Miles testified that Mr. Lannom said there would be no question made about the interest or something to that effect.

"It was not shown that respondent, defendant in error, authorized any such arrangement with reference to interest or knew anything about it, but be that as it may, we submit that the Court of Appeals was eminently cor-

rect in holding that the matter of interest raised by the answer to the petition for correction would call for an adjudication by the Court and would not be permissible under either Section 8721 or 8722 of the Code which provides for correction of clerical errors in judgments etc., and mistakes apparent in the record."

The record clearly bears out this statement. We cannot see how the question can be seriously made.

The petition must be overruled and denied.

All concur.