SHEW v. BAILEY (three cases).—260 S. W. (2d) 362.

Eastern Section. November 14, 1951.

Simmonds & Bowman, of Johnson City, for plaintiffs in error.

Bernard Cantor and Chase & Neel, all of Johnson City, for defendants in error.

ANDERSON, P. J. These three cases were tried together. They arose out of the collision between an automobile belonging to Shew and a motorcycle being operated by the minor, Harold Bailey, at or near the northeast corner of the intersection of Oakland Avenue and Watauga Avenue, in Johnson City. The accident occurred at five o'clock p. m. on June 9, 1950.

The first case was instituted by Shew against Harold Bailey. Shew sought to recover compensation for the damage done his automobile. The second suit was instituted by Harold Bailey by his father and next friend, William Howard Bailey. Young Bailey sought to recover from Shew damages for personal injury. The remaining suit was by William Howard Bailey, the father of the minor, to recover from Shew damages for loss of services

of the minor and reimbursement of expenses incurred by him in connection with the minor's injuries.

The trial before the judge and a jury resulted in a verdict for the defendant Harold Bailey in the first case. In the second, the jury found for the plaintiff and fixed his damages at $10,375. In the third the verdict was also for the plaintiff and the recovery was fixed at $3,100. Judgments were entered accordingly and Shew appealed in error only from the judgments awarding recoveries against him. Hence, we are not concerned with the result of the suit instituted by Shew for property damage to his car. Since the suit of the minor's father depends altogether upon the suit of his son for personal injuries, we will deal only with the latter, and for convenience of expression refer to the minor as plaintiff and to Shew as defendant.

The first contention is that there is no material evidence to support the verdict of the jury and hence the suit should have been dismissed on the defendant's motion for a directed verdict.

The verdict of the jury in the case brought by Shew against Bailey, considered in the light of the pleadings in that case and the judge's charge, manifestly was a finding that the accident was not the result of concurrent acts of the parties and that Bailey was not guilty of actionable negligence in the operation of the motor vehicle, at a wrongful rate of speed or otherwise.

Without regard to this finding, however, there appears to be no contention in this Court that Bailey was guilty of contributory negligence which barred his action. The only issue seems to be that there was no evidence to support a finding that the defendant Shew was guilty of actionable negligence.

In presenting this question, able counsel for the parties have argued at some length the weight of the evidence and the credibility of the witness. We are not concerned with these propositions. Both were conclusively settled in the plaintiff's favor by the trial judge's action in approving the verdict. We accept as established those facts implicit in the jury's verdict with respect to which there was material evidence of a substantial nature. We decide only whether the facts so found are sufficient in law to fix liability on the defendant.

Watauga Avenue runs east and west and carries a state highway. It is 24 feet wide from curb to curb and is intersected by Oakland Avenue running north and south, which is 39 feet wide from curb to curb. The defendant's automobile was traveling north on Oakland. He drove it into the intersection, intending to cross Watauga Avenue. When he reached a point at or near the northeast corner of the intersection, the motorcycle struck the right side of the car about the center, crushing the right door and caving in the pillar on the right side. At that time the front part of the automobile was north of the north curb line of Watauga Avenue and immediately prior to the impact the motorcycle was so close to the north line of Watauga that it scraped the curb.

The defendant was operating his car across the intersection in first gear. He was traveling five or six miles per hour. Strangely enough, there was no direct evidence of the rate of speed at which the motorcycle was being driven and no question is made with respect thereto. The collision caused Shew's car to veer across Watauga and knock down the post of a stop sign embedded in the concrete on the northwest corner of the intersection.

As said, the motorcycle was being operated by the minor plaintiff who was about seventeen years old at the

time. Another young man by the name of Lockner was on the vehicle, sitting behind the plaintiff. Both were rendered unconscious and plaintiff was very seriously injured. Both claimed they could remember nothing about the accident, and this failure of memory is not criticized or questioned by the defendant.

On the southeast corner of the intersection there is located a food store. This store is 31½ feet from Oakland Avenue and 52½ feet from Watauga Avenue. The space between the store and the street lines is utilized as a parking space for customers. As he proceeded north on Oakland Avenue and reached this store, the defendant pulled into this parking space and parked his car in front of the store. He disembarked, and after making some purchases in the store, backed his car into Oakland Avenue and southward on that street far enough to straighten it out and head north toward the intersection.

Twenty-five feet south of the curb line on Watauga there is painted on the pavement in very large letters the word, "Stop". The defendant testified that he knew of this sign and knew Watauga Avenue was a "*through*" street; that he stopped at the sign before entering the intersection, looked both ways on Watauga; that the only vehicle he saw was a bus coming from his right,—that is, proceeding west on Watauga,—and that the bus was in the act of stopping; that it did stop and opened the door for the discharge of passengers. He never saw the motorcycle at all until after the impact. He estimated the bus to be 150 feet east of the intersection when he started across. Several other eyewitnesses unmistakably show that the motorcycle was in plain view when the defendant reached the intersection. Their estimates of the distance of the motorcycle at that particular time vary from 30 to 150 feet. They also saw the bus, but they

agree that it did not stop at all and that the motorcycle had passed the bus when the defendant reached the intersection. Just before the impact the motorcycle veered to the right, apparently in an effort to pass in front of the automobile. It struck the car sideways.

The defendant made three different statements shortly after the accident, which are in conflict with his testimony. The first was made at the scene of the collision when the crowd had gathered. On this occasion he said he saw the motorcycle approaching, but thought he could "beat them". Another statement was made at the hospital some 15 minutes later. This time he said, "I saw the boys and thought I would have time to beat them but I didn't have time to make it". On the day following the accident, he said he had lost his wife shortly before, and was "studying about that and just pulled out and didn't look where I was going, unthoughtedly".

■■ As stated, the store on the southeast corner of the intersection was located 52½ feet south of the south line of Watauga. There can be no question about the fact that after he cleared the building, the defendant's view to the east was unobstructed and the jury could have found, and doubtless did, that as the defendant approached Watauga Avenue, the motorcycle was in plain view. The defendant was chargeable with seeing what, by the exercise of ordinary care, he should have seen, and the jury could have found that he was guilty of actionable negligence in failing to look to his right as he entered the intersection, or that he in fact did see the motorcycle approaching but nevertheless tried to cross in front of it when the exercise of ordinary care required him to allow it to pass before he attempted to cross the street. The evidence made these questions ones for the jury.

Cf. Yellow Bus Line v. Brenner, 31 Tenn. App. 209, 225, 213 S. W. (2d) 626.

The case cited correctly interprets the holding in Maxwell v. Kirkpatrick, 22 Tenn. App. 21, 116 S. W. (2d) 340, and Duling v. Burnett, 22 Tenn. App. 522, 124 S. W. (2d) 294. We find nothing in either which militates against the conclusion we have reached that the case was properly submitted to the jury.

In this connection it is proper to note, as we have done before, that distances when considered in connection with moving vehicles, take on a different significance than they appear to have when considered in the abstract. The plaintiff demonstrates this in his brief in an approximately correct calculation which may be used as an illustration. Assuming that as the defendant approached the intersection, the motorcycle was 100 feet away: if the motorcycle was traveling

at 10 miles per hour it was approximately 6 2/3 seconds away;
at 15 miles per hour it was approximately 4 1/2 seconds away;
at 20 miles per hour it was approximately 3 1/3 seconds away;
at 25 miles per hour it was approximately 2 8/9 seconds away;
at 30 miles per hour it was approximately 2 1/4 seconds away.

One count in the declaration was based upon the alleged violation of two city ordinances. The defendant assigns error on the admission of these ordinances in evidence and the action of the judge in charging that a violation of the same was negligence per se. The insistence is that they are applicable only to intersections at which signs of a particular type described in the ordinances had been erected and that no such signs had been erected at the intersection here involved. In other words, the ordinance requires that stop signs "be erected" at certain intersections, of which that here involved is one, and it is insisted that painting a stop sign on the pavement is not

the erection of a sign contemplated by the ordinance, and therefore the defendant was not required to stop at said intersection.

It is unnecessary to decide this question for two reasons; in the first place the verdict may be referred to the common law count of the declaration. In the second place the insistence made is contrary to the position taken by the defendant when he was testifying. He said that he was familiar with the intersection; that he knew Watauga was a through street and that he was required to stop before entering it; that he did so on the particular occasion, and always did so.

In these circumstances the presence or absence of a particular type of warning sign is immaterial with respect to the defendant's negligence in failing to yield the right-of-way. Note, 162 A. L. R. 927, 929; and Cf. Perry v. Carter, 188 Tenn. 409, 219 S. W. (2d) 905, and Atchley v. Sims, 23 Tenn. App. 167, 128 S. W. (2d) 975. In the last mentioned case it was held that a driver of a vehicle, familiar with conditions at an intersection of a side road and a main thoroughfare, might, irrespective of statute, be guilty of negligence in not stopping before entering upon the highway; but whether such an act would be negligent would present a matter for the jury to determine under all the facts and circumstances.

Under Code Section 2687 the result would be the same, if we assume that the intersection was not marked as required by the ordinance. That section provides that when two vehicles approach or enter an intersection at approximately the same time, the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right, with an exception not here material. In this case the defendant was on the left, and the plaintiff on the right.

Within the meaning of this statute, vehicles are approaching an intersection "at approximately the same time" when it would appear to a person of ordinary prudence, in the position of the driver of the vehicle approaching from the left of the other vehicle, that if the two continued on their respective courses, at the same rate of speed, a collision would be likely to occur.

The question does not necesarily depend upon which vehicle enters the intersection first, but primarily upon the probability of a collision when the relative distances and speeds of the two vehicles are considered. If, when so considered, there appears a likelihood of a collision unless one or the other alters its speed or course, then they are regarded as approaching the intesection "at approximately the same time", notwithstanding that the vehicle approaching from the left arrived at the intersection first. Cf. Tri-State Transit Co. v. Duffey, 27 Tenn. App. 731, 173 S. W. (2d) 706.

There are numerous cases supporting this interpretation of similar statutes. They are collected in the annotation appearing in 175 A. L. R. 1022.

Moreover, it is held to be the duty of the driver approaching from the left to determine whether he can safely cross the intersecting street, and this duty does not end with his entry of the intersection but continues as long as there is danger of a collision. See Blashfield, Cyclopedia of Automobile Law and Practice, Sec. 993, page 217; see Perry v. Carter, 188 Tenn. 409, 219 S. W. (2d) 905.

Applying these rules to the present case, the jury could have found that the plaintiff had the right-of-way and that the defendant undertook to cross the intersection when he knew, or in the exercise of ordinary care should

have known, that a collision with the approaching motorcycle was likely.

So, in no event could it be said to affirmatively appear that the action of the judge in charging with respect to the ordinances was prejudicial error requiring a reversal of the case. Code Section 10654; Thomason v. Trentham, 178 Tenn. 37, 154 S. W. 2d 792, 138 A. L. R. 461; Hime v. Sullivan, 188 Tenn. 605, 221 S. W. (2d) 893.

The defendant contends that the court erred in giving in its charge to the jury the rule of gross negligence. The insistence is that there was neither pleading nor evidence to justify such a charge.

The subject of what constitutes gross negligence is dealt with in the case of Stagner v. Craig, 159 Tenn. 511, 515, 19 S. W. (2d) 234; and the legal consequences of such conduct on the part of a defendant are familiar.

■ ■ The declaration was on the facts of the case and we agree with the plaintiff that where this is true, the question of whether the declaration charges gross negligence is to be determined by whether the facts constitute gross negligence irrespective of the conclusion of the pleader. Whether the averments were sufficient to make a case of gross negligence on the part of the defendant need not be determined, because we are satisfied that there was no evidence to justify such a charge. It is true that the willful disobedience of a traffic sign or signal may, not necessarily does, constitute gross negligence. Whether it does or not depends upon the facts and circumstances of the particular case. De Rossett v. Malone, 34 Tenn. App. 451, 239 S. W. (2d) 366. In the present case, viewing the evidence in the light most favorable to the plaintiff, the most that can be said is that the defendant failed to exercise ordinary care either in failing to see the approaching motorcycle or upon seeing it, in

concluding that he would have time to cross in front of it.

That he was not far wrong in his calculation is shown by the fact that he lacked but a few feet of making it across safely. This made a case of mere carelessness and not one where there was "such an utter disregard of consequences as to suggest some degree of intent to cause injury," Stagner v. Craig, 159 Tenn. 511, 515, 19 S. W. (2d) 234, 235; Cf. De Rossett v. Malone, 34 Tenn. App. 451, 239 S. W. (2d) 366, 372. The operation of automobiles, especially within the corporate limits of municipalities where the traffic is heavy, requires almost constant estimates of speed and distances which are of necessity made instantaneously. It is common knowledge that mistakes are made every day without any intent to injure another. Of course there could be such a case, but in considering the question it must be remembered that safety of the one causing the injury as well as that of the one who is blameless is at stake, and that fact militates against the idea of intentional misconduct. This is especially true where, as here, the defendant is a substantial citizen some 65 years of age.

There was thus submitted to the jury a question with respect to which there was no evidence at all. There is no doubt about this being error. The question is whether it is an error of such a nature as would justify a reversal. We think not.

■ At common law in jury trials, erroneous instructions were presumptively injurious and furnished grounds for reversal unless it affirmatively appeared that they were harmless. But by the Act of 1911, Chapter 32, carried into the Code at Section 10654, this rule was changed and the general rule now is that a mere probability of error is not sufficient. To justify a reversal, it must affirmatively appear that the error affected the

result. No presumption of prejudice is to be indulged from the mere fact that the error was committed. Thomason v. Trentham, 178 Tenn. 37, 154 S. W. 792, 138 A. L. R. 461; Getz v. Weiss, 25 Tenn. App. 520, 160 S. W. (2d) 438. In McClard v. Reid, 190 Tenn. 337, 342, 229 S. W. (2d) 505, it is held that Code Section 10654 does not apply to affirmative error in a charge.

A contrary view was expressed in the case of Mc-Alester v. Monteverde, 22 Tenn. App. 14, 21, 115 S. W. (2d) 257, in an opinion prepared by the writer for the Western Section of the Court, involving the alleged misconduct of a juror. That this was erroneous is made clear by the subsequently decided case of Thomason v. Trentham, supra.

In giving effect to Code Section 10654, it has been expressly held that an instruction which stated an abstract proposition of law but did not purport to be confined to the facts of the case, was not reversible error when it did not affirmatively appear that it affected the result of the trial. Carney v. Cook, 158 Tenn. 333, 13 S. W. (2d) 322; Hughes v. Taylor, 29 Tenn. App. 548, 198 S. W. (2d) 337.

Even before the statute, it was held that a charge on a particular point, required by neither the pleadings nor the evidence, is ordinarily a mere abstract proposition for which the court will not reverse. Knoxville Iron Co. v. Dobson, 83 Tenn. 409; Webster v. Fleming, 21 Tenn. 518; Porter v. Woods Stacker Co., 22 Tenn. 56.

The reason is that where there is evidence upon which the verdict might be based, it is not to be presumed that the jury ignored the evidence and based the verdict upon a theory with respect to which there was none. Cf. Proffit v. Williams, 9 Tenn. 89; Jarnigan v. Mairs, 20 Tenn. 473; York v. Newland, 29 Tenn. 330; Rexford v. Pulley, 63 Tenn. 364.

The remaining assignment of error is based upon the improper conduct of William Howard Bailey, next friend of the minor plaintiff, and himself a plaintiff in one of the other suits. The improper conduct consisted of the fact that Bailey allegedly "went to the jury room upon three different occasions while the jury was retired and in said room * * *." It is asserted that said conduct was not only highly improper but was done deliberately and intentionally and with an ulterior motive. In support of his motion for a new trial, the defendant filed the affidavit of one of the jurors. In substance, the affiant deposed that the jury retired to the jury room three times during the forenoon and upon each occasion Bailey, the father of the minor plaintiff, came to the jury room; that the first time he followed the members of the jury into the room; that affiant then thought he was a juryman; that the second time Bailey came into the jury room, some of the members of the jury were discussing the facts of the case; that Bailey went to the wash room door and someone being in that facility at the time, he stood by the door until that occupant came out, whereupon Bailey went in; that affiant recognized him as a party plaintiff and told the members of the jury to quit discussing the facts; that the third time Bailey came into the jury room, he "stood around and lit a cigarette" and affiant told him he was not supposed to be in there with the members of the jury; whereupon he left.

Upon the hearing, the plaintiffs offered the affidavits of the plaintiff William Howard Bailey and three members of the jury. Bailey deposed that he had never been in the court house before the day of the trial except a few minutes on the day before the trial when he carried a paper to the clerk's office; that he did not know his way around, and feeling the need to go to a rest room, he made

inquiry as to its location and was informed that there was one in what he later learned was the jury room; that the door to this room was open and he went in to relieve himself; that he found several people standing around but did not notice who they were; that he went straight to the rest room and when he had been relieved, came straight out but may have stopped long enough to light a cigarette while there; that he heard nothing that was said in the room; that he did not speak to anyone in there; that he had no purpose in going into the room other than to relieve himself; that he was not familiar with the courts and did not know there was any possible wrong in going into the room; that this occurred either in the morning or about noon during a break in the trial and before the case had been given to the jury and that he did not go into the jury room but the one time.

The three jurors corroborated Bailey in his statement that he went into the jury room only once, and that upon that occasion he went straight into the rest room, that he did not speak to anyone in the room and no one spoke to him. Oral evidence heard on the motion shows that apart from the toilet in the jury room, there were several toilets in the court house for the use of the public, one of these being on the second floor ''right off of the clerk's office adjoining the court room''. Neither Bailey nor any of the jurors was examined orally upon the hearing.

■ The conduct of Bailey was highly improper and calculated to reflect upon the integrity of the trial. We emphatically disapprove of it. When it was brought to the attention of his Honor, the trial judge, it was well within his power and authority to launch a full scale investigation by summoning before him all the affiants and other members of the jury, if need be, with a view of getting to the bottom of the matter, and this, if nec-

essary, upon his own motion, not only for the purpose of the case before him but in behalf of the good name of his court. Cf. Whitmore v. Ball, 77 Tenn. 35. That he did not do so is no doubt due to the fact that at the instance of counsel for the defendant, the presence and examination of all of the affiants was waived by agreement with counsel for the plaintiff.

The applicable rule is that if an improper act be not with a design to bias or influence the jury, but a mere inadvertence without any improper design, and if it can be safely assumed that it had no improper influence on the minds of the jurors, then there is no reasonable ground to disturb the verdict. Vaughn v. Dotson, 32 Tenn. 348.

While the conduct of Bailey was subject to severe censure, the only conclusion possible from the affidavits and evidence is that it was the result of ignorance and inadvertence, with no design to influence the jury. It is equally clear, we think, that there is no basis for a conclusion that the verdict was affected one way or the other. Hence it furnishes no basis for a reversal of the judgment. Code Sections 10653 and 10654.

The result is that the judgment is affirmed at the cost of the defendant Shew.

Hale and Swepston, JJ., concur.