**TENNESSEE ASPHALT COMPANY, Plaintiff-Appellant,**

v.

**PURCELL ENTERPRISES, INC., et al., Defendants-Appellees.**

Court of Appeals of Tennessee, Eastern Section.

Jan. 26, 1982.

Permission to Appeal Denied by Supreme Court April 5, 1982.

George F. Legg, of Stone & Hinds, P. C., Knoxville, for plaintiff-appellant.

Kelley Hinsley, of Noe, Hinsley & Sempkowski, Morristown, for Purcell Enterprises, Inc.

Wayne K. Houser, Jr., Asst. Atty. Gen., Knoxville, for defendants-appellees; William M. Leech, Jr., Atty. Gen., Knoxville, of counsel.

## OPINION

FRANKS, Judge.

The principal issue on appeal is whether a party to a construction contract calling for performing of labor and furnishing materials over a period of time may abandon the contract and recover for services and material furnished where the other party has violated a provision requiring payments at specified times during the progress of the work.

In 1977, defendant, Purcell Enterprises, contracted with the State of Tennessee to construct a road across Clinch Mountain in Grainger County. Defendant subcontracted with plaintiff, Tennessee Asphalt Company, for the paving work required under the contract with the state. Plaintiff began paving work in September, 1978, and continued to December, 1978, when the work was interrupted due to unfinished excavating and weather. Plaintiff submitted estimates for completed work, which represented approximately 9.65 per cent of the total paving required under the contract, and subsequently Purcell was paid $167,508.58 by the state based on plaintiff's estimates.

Under the subcontract, defendant agreed to pay Tennessee Asphalt as follows:

> 7. Subcontractor shall, on or before the last day of each month, file his estimate for materials and labor furnished for the preceding month, and upon said estimate being certified or accepted as correct by the Owner [State of Tennessee], the Contractor shall pay the amount covered by said estimate to the Subcontractor within two days after the receipt of money covered by said estimate paid the Contractor by the Owner. Retainage, however, in 7% per cent of each estimate shall be retained by the Contractor and the same shall not be due and payable to the Subcontractor until the Subcontractor's full compliance with this contract and until two days following receipt of the retainage by the Contractor from the Owner.

It is undisputed that plaintiff performed work and supplied materials in the amount of $180,116.75 and the payment by the state to defendant represented 93 per cent of the total value of labor and materials expended by plaintiff on the project.[1] It is further undisputed that defendant did not pay the amount covered by the estimate to the subcontractor within two days or at any time subsequent to payment by the state to the contractor.

On August 3, 1979, plaintiff filed suit for damages for breach of the contract and defendant filed a counterclaim for damages alleging plaintiff's failure to complete the paving as a breach.

The case was tried before the chancellor without a jury and the chancellor awarded plaintiff judgment in the amount of $196,935.13, including interest.[2] Subsequently, the chancellor ordered a new trial on the grounds the court was dissatisfied with the theories set forth in the pleadings, concerned that the court proceedings would interfere with an investigation of road building contractors under the federal anti-racketeering laws and concerned the trial was tainted by collusion between the parties. The chancellor then recused himself at the request of plaintiff.

The case was retried before a designated chancellor, who awarded plaintiff $87,042.70.[3] In arriving at the judgment, the chancellor stated:

> Gentlemen, the Court further finds that the defendant, Purcell Enterprises, did fail to pay to the plaintiff such monies as were received from the State of Tennessee for work and materials which they have furnished and had done on this particular project.
>
> The Court further finds that Mr. Ratliff for and on behalf of Tennessee Asphalt Company did use this failure to pay as a basis for not proceeding with the contract in order to relieve himself, of his own testimony—relieve the corporation based on his own testimony of a loss of $400,000.00.
>
> *The Court further finds that both the plaintiff and the defendant ... has and will suffer a loss of $515,000.00 [in] completing this contract with the State as a result of the plaintiffs not going forward with its part of the contract as originally entered into.* The Court feels and so finds that the actions of both parties contributed to the loss of each other, and the termination of the contractual relation-

1. Under defendant's contract with the state, the state retains 7 per cent of the contract price until the project is completed.

2. The chancellor's award consisted of the following items:

| | |
|---|---|
| $ 167,508.58 | money paid Purcell Enterprises by the state based on Tennessee Asphalt's labor and material estimates: |
| $ 7,462.21 | money paid Purcell Enterprises by Tennessee Asphalt in lieu of a performance bond; |
| $ 3,538.39 | money paid Purcell Enterprises by the state as an increase in the cost of asphalt supplied by Tennessee Asphalt. |

The remainder was interest.

3. The award included $18,425.95 interest; $3,500.00 for increase in cost of asphalt paid by the state to defendant; and $65,116.75 for labor and materials. Recovery was denied for money paid in lieu of a performance bond.

ship between the parties during the course of their dealings with each other.

. . . . .

The cost of this cause, Gentlemen, I think should be divided between the parties. I think there is a lot to be said on both sides and against both sides. *I suppose technically in deciding the case this way the cross complaint probably fails as a matter of law, and that in arriving at the damages I have offset one against the other.* [Emphasis supplied.]

The assertion of fact that both parties suffered $515,000.00 loss under the contract is an error. There is no evidence plaintiff suffered any loss; the $515,000.00 figure was mentioned by defendant's witness to the effect that defendant's losses in completing the contract would be approximately $515,000.00.

The conclusions in arriving at the judgment are inconsistent. Defendant was apparently awarded a set-off in excess of $100,000.00 on the labor and materials provided by plaintiff. No explanation for the amount is given; however, the trial court, in unmistakeable terms, dismissed defendant's counterclaim for damages based on plaintiff's failure to continue performance. The applicable rule on an inconsistent judgment is stated in 89 C.J.S. *Trial* § 636, at 468–9:

> A judgment will not be supported by findings of fact which are antagonistic, inconsistent, or contradictory as to material matters, unless the evidence is such that the judgment can be said to be clearly right regardless of the findings. Likewise, a judgment will not be supported by conclusions of law which are at variance with the findings of fact or which are inconsistent with each other, unless the judgment is in accordance with the correct conclusion of law from the facts found. However, the courts endeavor to reconcile findings which appear to be contradictory, so as to uphold the judgment if possible, and in order to do so will construe the findings as a whole and liberally in favor of the judgment; but the rule cannot be used to uphold findings that are inconsistent with each other. [Footnotes omitted.]

Assuming, *arguendo,* defendant was entitled to damages due to plaintiff's failure to perform, the set-off is not supported by the evidence. The only evidence concerning defendant's damages is Purcell's testimony and he calculated the losses on materials as $417,508.39 and estimated defendant's total losses to be $500,000.00 or $515,000.00. Accordingly, we cannot reconcile the inconsistencies in the judgment.

On appeal, plaintiff initially argues the chancellor improperly granted a new trial. We do not agree. A trial judge has broad discretion in granting a new trial. *Holmes v. Wilson,* 551 S.W.2d 682 (Tenn. 1977); *Young v. Reliance Elec. Co.,* 584 S.W.2d 663 (Tenn.App.1979). Where a trial judge is dissatisfied with the verdict he may set it aside and grant a new trial. *Hime v. Sullivan,* 188 Tenn. 605, 221 S.W.2d 893 (1949). The chancellor advanced sufficient reasons to grant a new trial and acted within his discretion.

The issue thus becomes whether the plaintiff breached its contract with defendant by refusing to continue performance due to the non-payment of the stipulated payments contained in the contract. Both parties rely on *United States for the use and benefit of Pickard v. Southern Construction Company, Inc.,* 293 F.2d 493 (6th Cir. 1961); *modified on other grounds,* 371 U.S. 57, 83 S.Ct. 108, 9 L.Ed.2d 31 (1962), which purports to apply Tennessee law, and states in pertinent part:

> In a building or construction contract calling for the performing of labor and furnishing of materials covering a long period of time and involving large expenditures, a stipulation for payments on account to be made from time to time during the progress of the work must be deemed so material that a substantial failure to pay would justify the contractor in declining to proceed. Under such circumstances the contractor cannot be expected to finance the operation to completion without receiving the stipulated

payments on account as the work progresses. [Citations omitted.]

This statement embodies the majority rule. *Guerini Stone Company v. P. J. Carlin Construction Co.*, 248 U.S. 334, 39 S.Ct. 102, 63 L.Ed. 275 (1919); *United States for the use and benefit of Building Rentals Corporation v. Western Casualty & Surety Company*, 498 F.2d 335 (9th Cir. 1974); *Pickens County v. National Surety Co.*, 13 F.2d 758 (4th Cir. 1926); *Segan Construction Corp. v. Nor-West Builders, Inc.*, 274 F.Supp. 691 (D.Conn.1967); *United States for the use and benefit of F. E. Robinson Co. of N.C., Inc. v. Alpha-Continental*, 273 F.Supp. 758 (E.D.N.C.1967); *Spitalny v. Tanner Constr. Co.*, 75 Ariz. 192, 254 P.2d 440 (1953); *Brady Brick & Supply Co. v. Lotito*, 43 Ill.App.3d 69, 1 Ill.Dec. 844, 356 N.E.2d 1126 (1976); *Aerostatic Engineering Corp. v. Szczawinski*, 1 Mass.App. 141, 294 N.E.2d 521 (1973); *Integrated, Inc. v. Alec Fergusson Electrical Contractors*, 250 Cal. App.2d 287, 58 Cal.Rptr. 503 (1967); *Pittman Construction Company v. Housing Authority of New Orleans*, 169 So.2d 122 (La. App.1964); *East Crossroads Center, Inc. v. Mellon-Stuart Company*, 112 P.L.J. 162 (Pa. Ct.Com.Pleas 1964); *aff'd* 416 Pa. 229, 205 A.2d 865 (1965).

The *Pickard* court found the rule inapplicable to the facts of that case and defendant argues that the *Pickard* decision establishes a rule that failure of performance which does not interfere with the unpaid party's ability to perform, such as one which does not result in the party's inability to obtain labor and supplies, is not a material breach, and it argues the record does not establish plaintiff was unable to obtain labor and material for the job due to delay in payment. *Pickard's* holding is an exception to the general rule based upon its facts. In that case, the subcontractor could not obtain a performance bond and agreed with the prime contractor that progress payments could be withheld in order to pay the subcontractor's suppliers directly. Based upon this supplemental agreement, the *Pickard* court held the failure to make the stipulated payments would not sustain a rescission of the contract and only if the subcontractor's suppliers had failed to supply the subcontractor due to the prime contractor's retention of the progress payments would the subcontractor be entitled to rescission.

An analysis of the facts in the instant case is required to determine whether the general rule is applicable.

W. T. Ratliff, president of plaintiff, first discussed defendant's lack of payment in January, 1979, with Bruce Purcell at a bid letting. Also discussed was the plaintiff's purchasing of an asphalt plant owned by defendant and located in Jackson, Tennessee. Three trips were made in the winter months to Jackson by Ratliff and, during the negotiations, Purcell understood the amount owed plaintiff on the subcontract would be "butted" (set off) against the purchase price of the asphalt plant. There was no agreement the payment would be delayed pending negotiations concerning the plant; however, Ratliff conceded that had his company purchased the plant the debt would have been set off in the purchase price. On April 30, 1979, Ratliff met with Purcell in Nashville and demanded payment. Purcell admitted being paid by the state and promised to pay plaintiff with interest. At the meeting the principals discussed the delays had resulted in increased cost of materials and agreed to meet with state officials to seek an increase under the contract. Ratliff and Purcell met the state officials on May 8, 1979, but no increases were granted. On May 17, 1979, defendant received a letter dated May 15, from plaintiff's attorney stating that plaintiff considered its subcontract cancelled due to nonpayment. In response by letter dated May 24, defendant's attorneys wrote they were ignoring the cancellation since Purcell and Ratliff were negotiating concerning the asphalt plant. By letter dated June 4, plaintiff's attorneys responded the contract was considered cancelled and disavowed any connection between the asphalt plant negotiations and the monies owed for the work completed under the subcontract. The negotiations for the purchase of the asphalt plant did not result in a sale and defendant

apparently considered the contract at an end after the June 4 letter, although Purcell and Ratliff did make another visit to state officials seeking increases. Plaintiff was never asked to return to the job site although some paving work was available in the summer of 1979. In September, 1980, the job was subcontracted to Summers-Taylor, Incorporated, for completion and the state apparently granted some increases for paving on the project; however, defendant suffered substantial losses due to the increase in cost of material.

We conclude the facts of this case do not prevent application of the general rule. A substantial delay at the time of payment has generally been held to be sufficient to constitute a material breach. *See United States for the use and benefit of F. E. Robinson Co. of N.C. v. Alpha-Continental, supra; East Crossroads Center, Inc. v. Mellon-Stuart Co., supra.*

Our Supreme Court, in *Brady v. Oliver,* 125 Tenn. 595, 147 S.W. 1135 (1911), held that inability to perform which will sustain rescission:

> [N]eed not necessarily be such as prevents the discharge of every obligation of the contract. But the inability to perform the contract in respect of matters which would render the performance of the rest a thing different in substance of the thing contracted to be done will justify the party not in default in abandoning the contract. 125 Tenn. at 615, 147 S.W. 1135.

*Brady* dispels defendant's suggestion that failure to pay installments will sustain rescission only if the non-defaulting party is financially unable to perform. The correct test is whether or not the lack of payments rendered plaintiff's performance "different in substance" from that originally contracted. Under defendant's argument, in effect, plaintiff would be required to finance the paving project and the contract does not require nor the law condone that result. *See Pickard, supra.* We conclude defendant's failure and refusal to pay as stipulated in the contract justified plaintiff's rescission and refusal to perform.

Finally, defendant argues plaintiff either waived its right to rescind or is equitably estopped on account of the elapse of time before declaring the contract terminated. A waiver is the voluntary relinquishment of a known right and is established by express declarations or acts manifesting an intent not to claim the right. *Dallas Glass, etc. v. Bituminous F. & M. Ins.,* 544 S.W.2d 351 (Tenn.1976). The evidence does not establish plaintiff ever manifested an intent to forego payment or rescission of the contract if payment was not made. While negotiations concerning the purchase of the asphalt plant led Purcell to believe that the payment was not required immediately, both principals testified the debt would have been paid had the purchase been consummated. There is no evidence plaintiff waived its right to payment.

Similarly, plaintiff's conduct does not estop it from rescinding the contract. Estoppel is based on the reliance on a statement of another to one's detriment. *Allen v. Neal,* 217 Tenn. 181, 396 S.W.2d 344 (1965); *Warren Bros. v. Metro. Gov't of Nashville,* 540 S.W.2d 243 (Tenn.App.1976). Defendant suffered no detriment by plaintiff's delay in terminating the contract. No work was ready for performance during the period of the delay and defendant did not procure another contractor until September, 1980, 16 months after plaintiff declared the contract terminated. Moreover, plaintiff's delay may be explained by the fact that a possibility of payment existed during the period of delay in the form of an offset on the purchase price of the asphalt plant and a substantial delay in payment is required to sustain a rescission.

We conclude plaintiff is entitled to recover judgment from the defendant for the $180,116.75 as the reasonable value of services and materials furnished under the contract, plus a pro rata refund of the cash paid defendant in lieu of bond, and $3,835.36, representing the liquid asphalt price adjustment by the state to defendant. We believe an award of interest at the rate authorized by *T.C.A.,* § 47–14–123 on the

recovery from May 15, 1979, is proper since defendant had the use of these funds with the exception of 7 per cent of the principal award. *See Johnston v. C. N. O. & T. P. Ry. Co.*, 146 Tenn. 135, 240 S.W. 429 (1921).

The trial court's dismissals of defendant's counterclaim and William Sansom, Commissioner of the Department of Transportation are affirmed.

The cause will be remanded to the trial court for entry of a judgment as set out herein against defendant, Purcell Enterprises, Incorporated, together with the costs incident to the appeal.

PARROTT, P. J., and GODDARD, J., concur.