Clara L. THOMAS, Plaintiff/Appellant,

v.

STATE of Tennessee, Defendant/Appellee.

Court of Appeals of Tennessee, Middle Section at Nashville.

Sept. 30, 1987.

Certiorari Denied by Supreme Court Dec. 21, 1987.

J. Lynn Watson, Murfreesboro, for plaintiff-appellant.

W.J. Michael Cody, Atty. Gen. & Reporter, Stephanie R. Reevers and William K. Tomlinson, Asst. Attys. Gen., Nashville, for defendant-appellee.

## OPINION

TODD, Presiding Judge.

On January 15, 1987, the Tennessee Claims Commission dismissed the claim of Clara L. Thomas against the State of Tennessee for damages resulting from a collision of a vehicle operated by plaintiff and a State vehicle operated on State business by Trooper Gossett.

On February 13, 1987, plaintiff filed with the Tennessee Claims Commission a "notice of appeal" in the form customarily used in appealing from the decision of a trial court under T.R.A.P. Rule 3.

Nothing was filed with the Clerk of this Court until May 18, 1987, when the record was filed.

T.R.A.P. Rule 12 provides in pertinent part as follows:

> The procedure for a statutory direct review of orders of an administrative agency by the Court of Appeals shall be as follows.
>
> (a) Petition for Review.—Review is instituted by filing a petition for review with the clerk of the Court of Appeals. The petition for review shall specify the party or parties seeking review and shall designate the respondent and the order to be reviewed. The agency and all other parties of record shall be named as respondents. The petition for review filed with the clerk of the Court of Appeals shall be accompanied by petitioner's or his counsel's address and a list of the names and addresses of the parties or counsel upon whom service is re-
> quired. The clerk of the Court of Appeals shall docket the proceeding and serve notice of the docketing as provided in Rule 5(c).
>
> (b) Service of the Petition.—The petitioner shall serve the petition for review on the agency and all other parties of record to the proceeding before the agency in the manner for serving and proving service of a notice of appeal in civil actions prescribed in Rule 5(a).

No provision is found in T.R.A.P. for appeal to this Court from an administrative decision by the filing of a notice of appeal.

There is no record that a petition for review was ever filed with the Clerk of this Court or served upon the Claims Commission.

Inasmuch as briefs have been filed and the appeal has been submitted for decision without any complaint as to the means whereby the case reached this court, the irregularity will be waived, but the parties would do well to familiarize themselves with T.R.A.P. Rule 12.

The collision in question occurred in the intersection of Spring Street and East Main Street in Murfreesboro, Tennessee. Traffic through said intersection is controlled by a traffic signal which, by displaying red or green lights permits or forbids movement of traffic through the intersection. Plaintiff's vehicle was southbound on Spring Street, and the State vehicle was eastbound on East Main Street. As plaintiff's vehicle passed through the intersection, it was struck in the left rear corner by the right front corner of the State vehicle.

Other details of the circumstances of the collision are disputed.

Plaintiff testified as follows:

> ... And just as I got about halfway up on Spring Street, on South Spring, the light turned green.
>
> Q. And you say halfway up. What do you mean halfway?
>
> A. I was—I was about 15 or 20 feet away from the light when it turned green.
>
> Q. Go ahead and tell me what happened.

A. And I proceeded to go on through cause my light was green and as I got under it the rear of my car was hit ...

....

Q. Mrs. Thomas, do you recall what your approximate speed was prior to this collision?

A. Well, I'd say not over 15 or 20 miles an hour because I had stopped at the light prior to that one and I didn't have time to get up much speed.

Q. And approximately how far were you from that traffic light when it turned green for you?

A. About 15 feet away.

....

Q. Mrs. Thomas, did you hear any siren or flashing light—or see any flashing lights—

A. No, sir.

Q. —before you entered the intersection?

A. No, sir.

Q. After you entered the intersection, do you ever recall hearing the siren or seeing the flashing lights?

A. No, sir.

Q. At the point of impact do you recall hearing or seeing those?

A. No, sir.

....

Q. Mrs. Thomas, do you have any problems with your hearing?

A. No, sir.

....

Q. But you never heard Trooper Gossett's siren during any of the time that—while you were waiting for the previous light to change or as you slowly approached the intersection?

A. No, ma'am.

Q. And you didn't see Trooper Gossett's bluelights on as you entered the intersection, did you?

A. No, ma'am.

Q. But you didn't look before you entered the intersection, did you?

A. No. I had the light. It was green and I proceeded to go through.

Trooper Gossett testified as follows: In response to radio instructions he was east-bound on East Main Street with blue flashing lights and siren operating. As he approached the intersection of Spring Street, he was faced with a red signal and slowed down. When he was about 25 feet from the intersection the signal changed to green and he proceeded into the intersection at about 30 miles per hour. He did not see plaintiffs vehicle until it was practically in front of him. He regarded the intersection as dangerous because "the line of sight for this intersection is not the most advantageous to all of the drivers."

Shirley Elliott, an eyewitness testified as follows: She saw the State vehicle approaching, but could not say whether the siren or the sound of his engine attracted her attention. Plaintiff could not see the approach of the State vehicle because of a building on the corner but should have heard the State vehicle and should have stopped.

The testimony of other witnesses need not be summarized for the purpose of this opinion.

The Commission found:

... Each vehicle, from the lack of extended skid marks and from the indications of the speed of the vehicles drove into the intersection as though each had the green light. The testimony of each party was that the light had changed from red to green for him or her and each had accelerated as they proceeded through the intersection. There is no evidence that the traffic light was malfunctioning. As the two parties approached the intersection, there is a bank located on the corner such that it blocks the vision of either vehicle of the other as they approach the intersection until they get fairly close to the intersection itself.

... the highway patrolman was responding to an emergency call and had his siren and emergency lights on as he proceeded through Murfreesboro toward the accident site. He entered the intersection traveling 30 to 35 miles per hour.

....

**652**

... Under the facts presented in this cause, the Commission concludes that the highway patrolman, though he was entitled to go through the red light, should have slowed down considerably because he was approaching a blind intersection and because he is charged with the knowledge that there may be an approaching vehicle who may be justified in not hearing his siren. Therefore, the highway patrolman was negligent. By the same token, the Plaintiff in this cause approached a blind intersection charged with the knowledge that there might be a vehicle approaching that might be entitled to take the right of way over the green traffic light which she had. She failed to perceive that such was occurring without any justification for her failing to perceive the approach of the highway patrol vehicle with its siren on. Thus, the Plaintiff was negligent in violating (T.C.A. §) 55–8–132(a)(1) and this act of negligence proximately contributed to the accident such as to bar her recovery.

On appeal, plaintiff first complains that the commission erroneously found that plaintiff was exceeding the speed limit where there was no evidence of a speed limit. No evidence is found of a speed limit, hence the finding was error. However, the finding of contributory negligence was also based upon evidence of other negligence on the part of plaintiff as will be discussed hereafter.

■ Plaintiff next complains that the Commission erred in finding that the siren and emergency lights were operating as the State vehicle approached the scene of the collision. Plaintiff argues that the evidence preponderates against this finding. Trooper Gossett testified that the siren and lights were operating as he approached the intersection. Plaintiff testified that she did not hear the siren and did not see the lights, but she also testified that she did not look to the right or see the State vehicle as she entered the intersection. Other circumstantial evidence indicates that the siren and lights were or were not operating. The evidence does not preponderate against the finding of the Commission on this disputed fact.

■ Plaintiff next complains that the Commission erred in finding her negligent by violating T.C.A. § 55–8–132(a)(1) which reads as follows:

Operation of vehicles and streetcars on approach of authorized emergency vehicles.—(a) Upon the immediate approach of an authorized emergency vehicle making use of audible and visual signals meeting the requirements of the applicable laws of this state, or of a police vehicle properly and lawfully making use of an audible signal only:

(1) The driver of every other vehicle shall yield the right-of-way and shall immediately drive to a position parallel to, and as close as possible to, the right-hand edge or curb of the roadway clear of any intersection and shall stop and remain in such position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer.

Plaintiff relies upon *Spence v. Carne*, 40 Tenn.App. 580, 292 S.W.2d 438 (1954) wherein this court discussed at length the duty of motorists entering an intersection. However, nothing in said opinion authorizes a motorist to proceed heedlessly and carelessly into and across an intersection, even under the authority of a green signal.

In 60A C.J.S., Motor Vehicles § 360(2), pp. 543, 544, 545, 547 is found the following text:

A green or go signal is not a command to go, but a qualified permission to proceed lawfully and carefully in the direction indicated. The driver with a favorable traffic signal does not enjoy an absolute right of way and may not arbitrarily exercise his right of way, and despite his superior position he must exercise appropriate care with respect to such matters as speed, lookout, and control. In other words, notwithstanding a favorable light, the fundamental obligation of using due and reasonable care applies, and failure of the favored driver to exercise such care may render him guilty of negligence or contributory negligence.

*Lookout.* The presence of signals at a crossing does not relieve a driver from the duty to keep a proper lookout when entering and crossing the intersection, and in this respect he must be held to have seen what looking would reveal, and the duty will be imposed on him to take appropriate action to overcome or safeguard against the dangers arising from any obstructions to view or limitations of vision. However, while it has been held that a motorist favored with a green light has the duty to look to both sides as he approaches and crosses the intersection, a lesser degree of caution in this respect is required, and the looking to both sides need not be continuous ...

....

Where a motorist has stopped for a red light and the light has changed to green, he must exercise due care in determining, before starting up, whether he can proceed again in safety. So, a motorist driving into an intersection just after the light has turned to green has the duty to exercise the highest degree of care, including the duty to maintain a lookout both laterally and ahead for whatever could be seen under the circumstances ...

In *Grabos v. Loudin,* 60 Wash.2d 634, 374 P.2d 673 (1962), it was held that an automobile driver who could have seen an emergency vehicle if he had looked to his right before entering the intersection was contributorily negligent as a matter of law, even though he entered the intersection on a green light.

In *Oelke v. Earle,* 271 Wis. 479, 74 N.W. 2d 336 (1956), it was held that even though a truck entered an intersection on a green light, it was still the duty of the driver to maintain a lookout as to automobiles approaching from his right, and if his vision was obstructed on his first observation he was required to make further observation to avoid collision.

The foregoing do not establish hard and fast rules for all cases, but they clearly indicate the requirement of due care when entering an intersection even under authority of a green light.

In the present case, plaintiff testified that, when she was "halfway up on Spring Street" and 15 or 20 feet away from the traffic signal, the signal facing her changed from red to green and that she proceeded through the intersection without looking. The evidence shows that East Main Street is a relatively wide thoroughfare with angle parking on both sides. Even though plaintiff entered the intersection under a green signal, she was not relieved of the duty of reasonable care which included a glance in either direction to make sure the crossing could be made in safety. If she had looked and had seen an ordinary vehicle approaching from a safe distance, she was entitled to assume that such vehicle would yield the right of way. If she had looked and seen the blue lights of the approaching State vehicle or had heard its siren, then her duty to yield would have superseded her right to proceed under the green light.

Plaintiff insists that she was under no duty to yield to the emergency vehicle until it appeared from *uncontradicted testimony* or by necessary inference that she had actual or constructive notice of the approach of the emergency vehicle and a reasonable opportunity to yield. This court does not agree that *uncontradicted* evidence is required to place the burden of yielding upon plaintiff. The Commission found from disputed testimony that plaintiff did have actual or constructive notice of the presence of the emergency vehicle and opportunity to yield the right of way. The evidence does not preponderate against this finding which must be presumed correct. T.R.A.P. Rule 13(d).

Plaintiff insists that, since she did not hear the siren, she was not required to yield the right of way. This Court does not agree. If plaintiff *should have heard* the siren or should have seen the blue lights flashing, she was under a duty to yield. She simply cannot evade her duty to yield to an emergency vehicle by saying that she did not hear and did not see because she did not look.

Plaintiff next insists that, if she were negligent, her negligence was a remote and

not a proximate cause of the collision. The Commission found that plaintiff should have looked as she entered the intersection, that she should have seen and heard the emergency signals and that she should have yielded in obedience to them. *Shew v. Bailey,* 37 Tenn.App. 40, 260 S.W.2d 362 (1951). These failures, especially the failure to yield, continued to the instant of the collision at which time the plaintiff was in the act of failing to yield the right of way. Her negligence was therefore proximate and not remote.

Plaintiff argues, correctly, that the State Trooper was obligated to exercise due care in spite of his preferred position as an emergency vehicle. The Commission so found, and this Court agrees. However, the negligence of the Trooper does not relieve plaintiff of the conclusive effect of her own negligence which contributed as a proximate cause to the injury. *Bejack v. Colby,* 141 Tenn. 686, 214 S.W. 869 (1919), *Grazer v. Windham,* Tenn.App. 1982, 640 S.W. 27.

The judgment of the Commission is affirmed. Costs of this appeal are taxed against the plaintiff.

Affirmed.

CANTRELL, J., and LLOYD TATUM, Special Judge, concur.