Mary Jo **KOWALSKI**, as guardian of the next of kin of Gregory E. Kowalski, et al., Plaintiffs–Appellees,

v.

Thomas J. **ELDRIDGE** and the City of Chattanooga, Defendants–Appellants.

Court of Appeals of Tennessee, Western Section, at Knoxville.

July 19, 1988.

Application to Appeal Denied by Supreme Court Oct. 31, 1988.

B. Stewart Jenkins, Chattanooga, for plaintiffs-appellees.

Randall L. Nelson, Jacqueline E. Schulten, Chattanooga, for defendants-appellants.

FARMER, Judge.

This is a wrongful death action arising from a collision between a fire truck and an automobile.

Norcross Road in Hamilton County is a two-lane road, twenty-six feet in width with narrow shoulders varying from three inches to fourteen inches. Gregory Kowalski was traveling northbound on this road at a speed between thirty and forty miles per hour when a fire truck, en route to a house fire, approached him from behind traveling between forty and sixty miles per hour.

Four witnesses testified to seeing the Kowalski car slow on the approach of the fire truck. Three of these witnesses saw it veer to the right edge of the lane. Then, for no apparent reason, since he was several feet short of an intersection, and without any signal, Kowalski made a left turn some thirty to forty-five feet in front of the passing fire truck. As a result of this action, the fire truck collided with the car and Kowalski was killed.

There is no dispute that the emergency equipment of the fire truck, which includes a siren, two air horns, a bell, headlights, fog lights, a rotating bubble light, and a mars light, were in operation at the time of the accident. However, Mrs. Kowalski argues that the rapid approach of the fire truck with this emergency equipment in operation created a panic situation for Kowalski. In support of this, she offered the testimony of a psychologist who stated that in an enclosed car, it would have been difficult for Kowalski to determine from which direction the sound of the fire truck was coming. In addition, the mirror and louvered rear window of the car might have distorted Kowalski's judgment of the distance of the approaching truck. The psychologist concluded that an attempt to escape the approaching vehicle with a left-hand turn was a rational move in these circumstances. Eldridge and the City of Chattanooga maintain that the approach of an emergency vehicle is not the type of event that should be encompassed by the sudden emergency doctrine.

At the conclusion of the evidence, the trial court found "that the actual direct cause of the collision itself was Mr. Kowalski making the left turn at an inappropriate time." He also concluded that Eldridge, the driver of the fire truck, was guilty of negligence "in approaching from the rear the Kowalski vehicle and attempting to pass on the left without first ascertaining in his own mind that he could do so with reasonable safety." The trial court further stated that

We know that Mr. Kowalski violated several statutes. We know that he attempted to make a left turn without giving any signal. We know that he attempted to make a left turn as a vehicle was passing from the left. And we know that, as was said, he ultimately turned into the path of the vehicle, causing his own death. That would normally be negligent conduct such as would bar a Plaintiff of any recovery.

. . . .

We know that the emergency vehicle had a lot of sounds and a lot of lights. And we know, we should at least, we don't know, but we should presume that Mr. Kowalski heard those sounds and saw those lights. We don't know for how long prior to the accident, but most probably from the proof within about 200

feet, perhaps as much as 400 feet. We know that a car traveling at 30 to 35 miles an hour covers that space in a matter of seconds. He perceived from the evidence that he was in a sudden emergency.

Indeed, as Mr. Nelson contends, it, in fact, wasn't an emergency. If he had continued going straight without even pulling to the right, just in the center of his lane, there would have been sufficient room for Mr. Eldridge to pass. There was not a real emergency. But in the Court's opinion, he probably, upon a well-founded belief, perceived that he was indeed in an emergency that was sudden.

As a result of the application of the sudden emergency doctrine, the trial court excused Kowalski's negligence and found Eldridge and the City of Chattanooga liable and entered judgment against them.

Eldridge and the City of Chattanooga appeal from this decision and raise the following issues for our review: (1) Did the trial court err in finding Eldridge negligent; (2) Did the trial court err in applying the sudden emergency doctrine to excuse Kowalski's negligence; and (3) Did the trial court err in permitting a psychologist to give an expert opinion on the way sound travels inside an automobile. The scope of our review in this non-jury matter is *de novo* on the record with a presumption of correctness of the trial court's findings of fact, unless the evidence preponderates otherwise. T.R.A.P. 13(d). When the conclusion drawn from these facts is one of law, there is no presumption of correctness. *Billington v. Crowder*, 553 S.W.2d 590 (Tenn.App.1977).

Eldridge was driving the fire truck with all its emergency equipment in operation at a speed between forty to sixty miles per hour en route to a structure fire. He testified that he approached the Kowalski vehicle from the rear, and as he began merging into the left lane to pass the car, Eldridge noticed the Kowalski car began to slow. Unlike three other witnesses, however, he did not see Kowalski edge to the right side of his lane before making a left turn in front of the truck. The trial court stated that:

> I think we can conclude that the Kowalski vehicle at some point prior to the collision moved to the right.
>
> Mr. Eldridge didn't observe that. And if it's his conduct we're evaluating at this point, then it's his perception that we must consider.

The trial court concluded:

> Mr. Eldridge attempted to make a pass on a 26-foot wide roadway with steep shoulders or no shoulders but a steep embankment and a ditch to the right, not being certain in his own mind that the Kowalski vehicle was even aware of his presence or that he was prepared to yield. The Court feels that a reasonably prudent driver of an emergency vehicle would have stayed behind the Kowalski vehicle for a greater length of time and a greater distance before attempting to pass, indeed, to see if Mr. Kowalski did those things that Mr. Eldridge said most drivers do.

The trial court found that this action by Eldridge was negligence and, although not specifically stated, it is presumed that by rendering judgment the trial court found his negligence to be the proximate cause of the accident.

Mrs. Kowalski contends that the decedent could not comply with T.C.A. § 55-8-132, which sets forth the procedures required of an automobile on the approach of an emergency vehicle, due to the danger of the small shoulder on the right-hand side of the road and the ditch located beyond that. The statute, however, addresses the contingency of a driver being unable to completely move his vehicle to the shoulder of the road.

**55-8-132. Operation of vehicles and streetcars on approach of authorized emergency vehicles.—**(a)

. . . .

(1) The driver of every other vehicle shall yield the right-of-way and shall immediately drive to a position parallel to, and as close as possible to, the right-hand edge or curb of the roadway clear of any intersection and shall stop and remain in

such position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer.

Mrs. Kowalski also asserts that, upon his approach in the fire truck, Eldridge should have known that in an enclosed car with louvered rear windows "Kowalski's ability to see the truck and accurately gauge its speed and distance from him might be impaired." Such rationale would lead to a determination of negligence not only based upon one's actions, but also upon the options of the other person's car. If Kowalski should have heard the sirens and should have seen the flashing lights of the fire truck, he had the duty to yield. *See Thomas v. State*, 742 S.W.2d 649, 653 (Tenn.App. 1987).

■ As a result, we find that the trial court erred in imposing the subjective duty on Eldridge that he must be certain in his own mind that Kowalski was aware of his presence and prepared to yield. Such a duty is not required by the statute addressing the operation of an emergency vehicle, T.C.A. § 55–8–109, or the procedure set forth in T.C.A. § 55–8–117 for passing a car to the left. Moreover, "[i]t is a general rule of law that, in the absence of circumstances indicating otherwise, the operator of a motor vehicle has the right to assume, and to act on the assumption, that other users of the highway will obey the law and exercise due care." *Hampton v. Padgett*, 414 S.W.2d 12, 15 (Tenn.App.1967). Eldridge had the right to assume that Kowalski would lawfully respond not only to the emergency signals on the fire truck, but also to yield to a vehicle passing on the left. Kowalski did neither. The record is clear that at the time the fire truck pulled into the passing lane, the driver had no reason to suspect the decedent would execute a left turn into the path of the truck.

■ The trial court applied the sudden emergency doctrine to excuse its finding of negligence on the part of Kowalski.

The sudden emergency doctrine is not an exception to the general rule requiring due or ordinary care in the operation of an automobile, but the emergency is one of the circumstances to be taken into consideration in determining whether the operator has exercised reasonable care. The doctrine must be kept within narrow limits if anything like safety is to be kept on streets and highways with the present rapid means of locomotion, and cannot be extended so as to justify the driver in disregarding the rights of others in the effort to save himself, although he may exercise his right to take care of himself and avoid death or bodily injury, provided he acts with such care as an ordinarily prudent person would exercise. The driver's negligence, with respect to an emergency, must be determined by his conduct from the moment it arose until the moment of its termination.

60A C.J.S. *Motor Vehicles* § 257.

[W]here the motorist created the emergency, or brought about the perilous situation, through his own negligence he cannot avoid liability for an injury on the ground that his acts were done in the stress of emergency; nor can he avoid liability where his conduct, in an emergency, constituted negligence.

60A C.J.S. *Motor Vehicles* § 368. The party asserting the sudden emergency doctrine must be free of fault in creating the emergency in whole or in part. *Ellison v. Lankford*, 650 S.W.2d 762 (Tenn.App.1983).

Mrs. Kowalski argues that Kowalski was faced with an emergency situation by the rapid approach of the fire truck, and he chose one of several alternatives to escape. Therefore, his actions in turning to the left in front of the fire truck should be excused by the sudden emergency doctrine.

The trial court found that Kowalski was likely aware of the approach of the fire truck when it was between 200 and 400 feet behind him. From that time he failed to yield to an emergency vehicle and a passing vehicle, thus violating two state statutes. Further, he made a left turn in front of the fire truck without his signal.

■ The sudden emergency doctrine is applicable to a situation faced by a person which is unusual or unforeseeable, through no fault of his own, but which requires him to make a choice between possible escape

routes. It is the opinion of this Court that the approach of a fire truck is not such an occurrence as to be encompassed by the sudden emergency doctrine. The sudden emergency, if any in this case, was not created by the approach of the fire truck, but by Kowalski's violation of the statutes. *See Lewis v. Kirk*, 283 S.E.2d 846 (W.Va. 1981). Having found that the sudden emergency doctrine is not applicable and that Eldridge was not negligent in his operation of the fire truck, we need not address the third issue raised by Eldridge as to the admissibility of the psychologist's testimony with regard to the way sound waves travel within an enclosed car.

Judgment of the trial court is reversed and the cause dismissed. Costs in this Court and the court below are assessed against the appellee for which execution may issue if necessary.

TOMLIN, P.J., W.S., and HIGHERS, J., concur.