KATHY S. DILLON,  and husband )
DONALD L. DILLON, )
)
      Plaintiffs/Appellants, )
) **Tennessee Claims Commission**
VS. ) **No.  304797**
)
)
STATE OF TENNESSEE, ) **Appeal No.**
) **01A01-9701-BC-00020**
      Defendant/Appellee. )

FILED

June 20, 1997

Cecil W. Crowson
Appellate Court Clerk

## IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

### APPEAL FROM TENNESSEE CLAIMS COMMISSION,
### MIDDLE DIVISION, OF DAVIDSON COUNTY
### AT NASHVILLE, TENNESSEE

## HONORABLE W. R. BAKER, COMMISSIONER, MIDDLE DIVISION


John Knox Walkup
Attorney General & Reporter

Michael W. Catalano
Associate Solicitor General
500 Charlotte Avenue
Nashville, Tennessee 37243-0497
ATTORNEYS FOR DEFENDANT/APPELLEE

Gary R. Gober
Harry L. Weddle
2505 21st Avenue, Suite 301
Post Office Box 121497
Nashville, Tennessee 37212
ATTORNEYS FOR PLAINTIFFS/APPELLANTS


## MODIFIED AND REMANDED.



HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION




CONCUR:

BEN H. CANTRELL, JUDGE
WILLIAM C. KOCH, JR., JUDGE

| KATHY S. DILLON, and husband | ) |
| DONALD L. DILLON, | ) |
| | ) |
| Plaintiffs/Appellants, | ) |
| | ) Tennessee Claims Commission |
| | ) No. 304797 |
| VS. | ) |
| | ) |
| STATE OF TENNESSEE, | ) Appeal No. |
| | ) 01A01-9701-BC-00020 |
| Defendant/Appellee. | ) |

# O P I N I O N

This appeal arises from the injury of a passenger in a motor vehicle which was struck in the rear by a Tennessee Highway Patrol Cruiser operated by a Trooper of the patrol. The State Claims Commission found the fault of the Trooper to be 85% and that of the driver of vehicle occupied by the injured passenger to be 15% and assessed damages accordingly. The State filed a petition for judicial review by this Court, presenting the following issues:

> 1. Trooper Christian saw the Dillon car followed by a car driving erratically. He pursued the erratic car, crested a rise, saw only Dillon and immediately turned on his emergency equipment. When Dillon slowed and moved toward the right shoulder, Christian attempted to pass, but Dillon began to turn left. Christian veered to the right and hit Dillon's rear bumper. Did the Commissioner err in holding that Trooper Christian breached his duty of care to Dillon?

> 2. When Mr. Dillon began to turn left, he activated his left turn signal less than 50 feet before the turn in violation of state law. Based on this act, the Commissioner held that Mr. Dillon was only 15% at fault. Did the Commissioner err in that Trooper Christian was 85% at fault?

The Claimants present the issues in the following form:

> 1. Whether the Tennessee Claims Commissioner erred by a preponderance of the evidence in holding that an experienced highway patrol officer failed to use due regard for the safety of the plaintiffs by initiating a high-speed chase around them from the rear over hilly terrain in the dark on a rain-wet road after turning on his emergency equipment two-tenths of a mile back at 50 m.p.h. in a 30 m.p.h. residential area and then, despite having total visual command of the situation, crashing violently into the rear of the car as it sat entirely in the right lane of a shoulderless, two-lane road in front of the plaintiffs' driveway with the turn indicator blinking?

-2-

2. Whether the Commissioner, after assessing the credibility of the witnesses and the weight of all the evidence at trial, erred in apportioning 85% of the fault to the negligent trooper who had ample time and distance to slow his cruiser to a controllable speed under the road conditions and known presence of the plaintiffs; and who testified that he knew beforehand that the wetness of the road would diminish his ability to stop or slow his cruiser, yet maintained an uncontrollable speed on approach of the plaintiffs' vehicle from the rear, despite his admitted personal knowledge that the driver of the plaintiffs' vehicle might not have then perceived his cruiser two-tenths of a mile behind him at 50 m.p.h.?

## I.

## <u>THE FACTS</u>

With minor exceptions noted hereafter, the facts are undisputed.

The collision occurred on U.S. Highway 70N which is a two lane paved highway with no shoulder adjoining the pavement on the north side due to a ditch near the pavement.

Plaintiff Donald Dillon was driving his vehicle westward in the described area at a very slow speed searching for a driveway on the south (left) side of the roadway which  driveway he intended to enter by turning left across the (south) east-bound lane of the roadway.  It was dark and raining, causing low visibility.  Approximately 3/10 of a mile to the east of the scene, there is a crest in the level of the road obscuring vehicles beyond the crest.  East of said crest, the speed limit was 55 m.p.h., but west of the crest, the speed limit was 30 m.p.h.

For some distance before arriving at the scene, Mr. Dillon noticed another private vehicle (not the patrol cruiser), approaching at a high rate of speed shifting his headlights high and low as though trying to pass.  At some point near the crest, the speeding vehicle passed the Dillon vehicle and continued westward at a high rate of speed.

At about this time, the Trooper was approaching the scene from the west, moving eastward, facing the Dillon vehicle. Seeing the antics of the speeding vehicle, the Trooper decided to chase and intercept the speeding vehicle, but it was necessary to change direction to do so. After passing the Dillon vehicle, the Trooper continued eastward to a point where the reversal of direction was accomplished and the Trooper approached the scene, westbound at a high rate of speed with siren and emergency lights activated. The cruiser was not visible to Mr. Dillon until it passed the crest in the road 3/10 of a mile from the Dillon vehicle. Mr. Dillon testified that he never heard the siren or saw the blue lights until just before the collision, but that at the time of the collision he had moved to the extreme right of his lane and was moving slowly.

The trooper testified that he saw the brake signal of the Dillon vehicle and the movement to the right portion of the west bound lane and presumed that Mr. Dillon was yielding the right of way, and that he (the Trooper) began the movement to pass the Dillon vehicle on the left, using the southern (east-bound) lane; but the Dillon vehicle began to display a signal for a left turn and began to move to the left (southerly) portion of the west bound lane; and that the Trooper then expected Mr. Dillon to turn left across the south (east bound) lane which would result in the cruiser striking the Dillon broadside.

The Trooper testified that his only alternative was to attempt to pass to the right of the Dillon vehicle, but that he was unable to do so, succeeding only in hitting the Dillon vehicle in the rear instead of the side.

The points of contact with the Dillon vehicle included the entire rear, that is, from the left end to the right end of the rear bumper. When struck, the Dillon vehicle was entirely within the west bound lane.

## II.

## THE LAW

T.C.A. § 55-8-108 reads in pertinent part as follows:

> **Authorized emergency vehicles**. - (a) The driver of an authorized emergency vehicle, when responding to an emergency call, or when in the pursuit of an actual or suspected violator of the law, or when responding to but not upon returning from a fire alarm, may exercise the privileges set forth in this section, but subject to the conditions herein stated.
>
> - - - -
>
> (3) Exceed the speed limits so long as life or property are not thereby endangered; and
> (4) Disregard regulations governing direction of movement or turning in specified directions.
> (c) The exemptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of audible and visual signals meeting the requirements of the applicable laws of this state, except that an authorized emergency vehicle operated as a police vehicle may be equipped with or display a red light only in combination with a blue light visible from in front of the vehicle.
> (d) The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of the driver's own reckless disregard for the safety of others.

T.C.A. § 55-8-143 reads in pertinent part as follows:

> **Signals for turns**. - (a) Every driver who intends to start, stop or turn, or partly turn from a direct line, <u>shall first see that such movement can be made in safety</u>, and whenever the operation of any other vehicle may be affected by such movement, shall give a signal required in this section, plainly visible to the driver of such other vehicle of the intention to make such movement.  (Emphasis supplied.)

T.C.A. § 9-8-403 (a) (1) provides in pertinent part as follows:

> The decisions of the individual commissioners may be appealed to the entire claims commission pursuant to rules promulgated by the commission.  The decisions of the individual commissioners or, when rendered, decisions of the entire commission regarding claims on the regular docket may be appealed to the Tennessee Court of Appeals pursuant to the Tennessee Rules of Appellate Procedure, except that tax appeals shall go directly to the Tennessee Supreme Court and

workers' compensation appeals shall be appealed pursuant to the procedure for other workers' compensation cases under § 50-6-225(e).

TRAP Rule 13 (d) provides in pertinent part as follows:

> **(d) Findings of Fact of Civil Actions.** - Unless otherwise required by statute, review of findings of fact by the trial court in civil actions shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise. Findings of fact by a jury in civil actions shall be set aside only if there is no material evidence to support the verdict.

## III.

## DECISION OF THE COMMISSION

The judgment of the Commission contains the following:

> The trooper was trying to catch a westbound car that had been driving recklessly and apparently drunkenly. His bluelight signals, his siren, and his headlights were all in full operation (but not his horn). At one point he had been driving 65 or seventy miles an hour. There was no impediment whatever to his seeing traffic ahead of him for at least a quarter of a mile, and he did in fact see the car he hit as he came up behind it. The trooper testified that he was going "forty to fifty" miles an hour at the point of impact.

> The trooper said that he hit the car the claimant was in "right smack dab in the rear." The collision happened in the westbound right lane of the highway.

> It is not disputed that, as a matter of fact, neither the claimant nor her husband saw or heard any of the trooper's signals.

> The duty arises when a party should have heard the siren or should have seen the lights flashing. But Thomas v. State does not say that anybody has a duty to hear what he did not hear or see what de did not see; the holding of Thomas v. State is that anybody is responsible for looking for on-coming traffic on any road he enters or crosses. Kowalski v. Elderridge, 765 S.W.2nd 746 (Tenn. App. 1988), has no reference to the duty of a driver who did <u>not</u> hear or see a signal but should have: in that case the Court held that the driver in fact did hear the signal.

- - - -

This trooper was trained and experienced; in particular he knew that other drivers sometimes cannot see or hear emergency equipment. He had a full view of all the circumstances. This trooper made mistaken assumptions (like thinking the car ahead of him was going to go straight down the highway and not turn left) and mistaken perceptions (like thinking that the car ahead of him had heard or seen his signals and was yielding); his acting on these mistakes, when ordinary care under the circumstances required him to slow down, was the main cause of this wreck.

But the trooper's actions were not the only cause of the wreck. As the State's brief says, "It is a violation of Tennessee law to make a left-hand turn into a private driveway without giving a signal continuously for a distance of at least fifty feet. It is undisputed in this case that Mr. Dillon failed to signal his proposed left-hand turn properly. This Commission takes judicial notice that any (sic) people perform the dangerous driving error (which as the State's brief says is a violation of the law) of signaling a turn only while they are making the turn rather than before it, and sometimes only after coming to a full stop preparatory to making the turn; this peculiar unreasonable hesitation and reluctance to sue turn signals is very common, so that any trained and experienced highway patrolman must be familiar with it and prepared for it.

All things considered, particularly that the trooper was experienced and well trained, that the trooper had a full clear view of everything involved, that the other driver never heard or saw the trooper's signals and had no obligation to notice them because he never left his own traffic lane, that there was nothing to keep the trooper from driving more carefully than he did while coming up behind the other car, and that Mr. Dillon clearly violated a statute in not signaling his proposed turn properly. The Commission finds that Mr. Dillon was 15% liable, and that trooper Christian was 85% liable, for this wreck.

## IV.

## NEGLIGENCE OF MR. DILLON

The evidence does not preponderate against the decision of the Commission that Mr. Dillon did not see or hear the lights or siren (in time to obey them), and the finding of the Commission that Mr. Dillon violated T.C.A. § 55-8-142 and 143 by failing to give a timely signal before stopping or turning. These findings must therefore be affirmed.

However, the Commission did not mention that Mr. Dillon failed to perform the mandate of T.C.A. § 55-8-143, that every driver "who intends to start, stop or turn from a direct line shall first see that such movement can be made in safety." It is clear from a preponderance of the evidence that Mr. Dillon failed to observe the above emphasized portion of the statute; that his negligence in this regard was one of the principal causes of the collision and; that, had Mr. Dillon looked before turning from a straight line, he would not have begun the left turn which misled the Trooper as to Mr. Dillon's intentions, and the collision would probably not have occurred.

## V.

## NEGLIGENCE OF THE TROOPER

The evidence preponderates in favor of the finding of the Commission that the Trooper was negligent acting upon assumptions that were not sufficiently well founded to justify his actions, and that said negligence of the Trooper was the "main cause of this wreck." However, the preponderance of the evidence does not support the finding that the failure to give timely notice of a turn is commonplace or, if so, such practice was known and should have been acted upon by the Trooper, or that it was subject to "judicial" (or administrative) notice by the Commission. This Court therefore declines to affirm these findings.

## VI.

## DISPOSITION OF APPEAL

The findings of fact heretofore concurred in by this Court distinguish the present case from *Kowalski v. Eldridge*, Tenn. App. 1988, 765 S.W.2d 746 and *Thomas v. State*, Tenn. App. 1987, 742 S.W.2d 649, cited by the State.

The circumstances of this particular case require a revision of the percentages of fault assigned by the Commission (85% to the Trooper and 15% to Mr. Dillon). As above explained, the failure of Mr. Dillon to first ascertain that his movement could be made with safety substantially increases the percentage of his fault; and the rejection of the duty of the Trooper to know and act upon common negligence of motorists materially reduces the percentage of fault of the Trooper.

In *Wright v. City of Knoxville*, Tenn. 1995, 898 S.W.2d 177, the Supreme Court said:

> Although it is true that the trier of fact has considerable latitude in allocating percentages of fault to negligent parties, see e.g., *Martin v. Bussert*, 292 Minn. 29, 193 N.W.2d 134 (1971), appellate courts may alter those findings if they are clearly erroneous. Because this case was tried without a jury, our review of the issues of fact is de novo on the record of the trial court. However, we must presume that the trial court's findings were correct unless the preponderance of the evidence is otherwise. Tenn. Code Ann. § 27-3-103; Tenn. R. App. P. 13(d).

In the present appeal, after revising the finding of fact to conform with the preponderance of the evidence, this Court finds that the allocation of fault by the Commission was "clearly erroneous" and revises the judgment of the Commission by allocating 60% of fault to the Trooper (i.e., the State) and 40% to the claimant Donald L. Dillon.

No issue is made as to the finding of the Commission of $220,000.00 total damages. Accordingly, this Court affirms and adopts this finding, but reduces the net award 40% or $88,000.00 to $132,000.00. Costs of this appeal will be paid out of the Claims Fund of the State.

The cause is remanded to the Claim Commission for further appropriate procedure.

**MODIFIED AND REMANDED.**

_____
HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

CONCUR:

_____
BEN H. CANTRELL, JUDGE

_____
WILLIAM C. KOCH, JR., JUDGE